## R. C. HAWKINS v. M. J. LEE AND OTHERS.

By the common law, when a person takes an estate of freehold under a deed, will, or other writing, with a limitation in the instrument, by way of remainder, of an interest of the same quantity to his heirs, or the heirs of his body, as a class of persons to take in succession, the limitation to the heirs entitles the ancestor to the whole estate.

If a father give to his daughter, a married woman, a slave, to belong to her and the heirs of her body, by the common law, so soon as the slave is reduced into possession, he becomes the absolute property of the husband.

In a gift of personal property to a wife, in order to exclude the marital rights of the husband from attaching and converting the property to his sole ownership, where the common law is in force, there must be a clear and unequivocal intention manifested in the conveyance, that the wife shall possess the exclusive interest in the property.

The fact, that a slave thus acquired by the husband, through a gift to the wife, was, after this rule of the common law was abolished by statute, and the wife's property secured to her, exchanged by the wife for another slave, could not effect the husband's rights; and the slave, last acquired, though the change was effected by the agency of the wife, would still be the absolute property of the husband.

If a verdict be found for a gross sum, for the hire of a number of slaves, (for which suit was brought,) and the plaintiffs were not entitled to recover one of the slaves, nor his hire, the court cannot know, from the verdict, the amount for which plaintiffs are entitled to judgment, for the hire of those as to whom the verdict was correctly rendered.

The provisions of the laws of other States, which were in evidence upon the trial, should distinctly appear by a particular reference, and should either be copied in the record, or accompany it, when the case is submitted for decision.

The practice of copying into the record, as a statement of facts, the depositions of witnesses, with commissions, &c., when the material facts might be much more intelligibly presented by a concise statement, as the law requires, is not correct.

Such a practice is not a compliance with either the letter or spirit of the statute, which requires the party giving notice of appeal, "to make out a clear and explicit statement or bill of the facts" proved upon the trial; and if parties do not see proper to comply with the plain requirements of the statute, in preparing their statement of facts, they will have no cause to complain, if the court should decline to recognize anything as a statement of facts, which is not such as the law contemplates.

APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

Suit by appellees against the appellant. The petition alleged that the plaintiffs, Martha Jane Lee, and Mary F. James, William K., Ellen S., and Martha J. English, the minor children of said Martha Jane Lee, and her former husband, William K. English, deceased, (and for whom she sued as maternal guardian and next friend,) were the owners of seven slaves, named and described in the petition, and then in the possession of the defendant; and also that defendant was indebted to plaintiffs, on account of the hire of said slaves, for the period stated in the petition.

The defendant pleaded a general denial, title in himself to all the negroes sued for, and prescription, by adverse posesssion for five years under the statute of limitations of the State of Arkansas, and for two years under that of Texas.

It appeared from the testimony, that appellant married Sylvania McDonald, in the State of Mississippi, in the year 1819; that her father, Willis McDonald, made a parol gift "to her, and the heirs of her body," of a slave named Peter; that the appellant and his wife removed to the territory of Arkansas in the year 1830; that in 1840, Mrs. Hawkins went on a visit to her father in Mississippi, and while there, exchanged with him said negro boy Peter, for the slave Zack, now in suit; that said negro, Zack, remained in the possession of appellant, in Arkansas, from that time until his removal to Texas, in the year 1853, and had continued in his possession in this State, from that time until the bringing of this suit.

Mrs. Sylvania Hawkins died in July, 1844, leaving two children, to wit, the appellee, Martha Jane Lee, then the wife of William K. English, and Richard Hawkins, who died a minor, without issue, in July, 1848. English died in 1853, and a short time thereafter, appellant and appellee, Martha Jane, and her children, removed together to Texas, and for some time subsequently resided together. It was admitted that, previous to 1839, the common law upon the subject of marital rights was in force in Arkansas and Mississippi, and that the statute of the latter State, "for the protection and preservation of the rights and property of married women," was enacted in 1839.

It is unnecessary to state the facts in reference to the other negroes. Upon the trial, the court, in its charge to the jury, said:

"6th. If you believe, from the evidence, that the slave Zack "was given by the father-in-law of Hawkins, in Mississippi, to "his daughter, Mrs. Hawkins, with an express condition to "belong to her and the heirs of her body, acquiesced in and "admitted by Hawkins, during the lifetime of his wife; then the "possession by Hawkins of this boy, up to his wife's death, in "1844, was not a possession adverse to his wife's interest, and "the plaintiff, Mrs. Lee, is entitled to a verdict in her favor for "Zack.

"7th. If you believe, however, that Hawkins claimed a title "to himself in Zack, openly and adversely to his children, the "deceased Richard, and the plaintiff, Mrs. Lee, for five years, in "the State of Arkansas, then you will render a verdict in favor "of the defendant, Hawkins, for the boy Zack."

There was a verdict in favor of the plaintiffs for all of the negroes, and also for $500, as a balance due for their hire.

*Hewitt* and *Newton*, for appellant.

*Wall* and *Cleveland*, for appellees.

WHEELER, Ch. J. We are of opinion that the court erred in the sixth instruction, and that the verdict, in so far as it is a response to the sixth and seventh instructions, was contrary to law and the evidence.

It appears that the slave, Zack, was given in exchange for a slave, Peter, which had been given to the former Mrs. Hawkins, by her father, in Mississippi, in 1819. It is agreed, that the common law of England was the law of Mississippi, except as altered or modified by statute. It has not been shown, that there had been any such alteration or modification of the common law, in Mississippi, affecting this case.

By the common law, when a person takes an estate of freehold, under a deed, will, or other writing, with a limitation in the instrument, by way of remainder, of an interest of the same quality, to his heirs, or the heirs of his body, as a class of persons to take in succession, the limitation to the heirs entitles the ancestor to the whole estate. (4 Kent's Com. 215; Hancock v. Butler, 21 Tex. Rep. 804.) The rule of the common law, applied to real property, enlarges the estate for life into an inheritance; applied to personal property, it makes the tenant for life absolute owner. (4 Kent's Com. 227.)

Irrespective of the question, whether the gift to Mrs. Hawkins, "and the heirs of her body," could be established, as in this case, by parol; by the rule of the common law, Mrs. Hawkins became, by force of the gift, absolute owner of the property. Being personal property of the wife, absolutely, in possession, the marital rights of the husband attached, and it became, by the common law, his property; for there is nothing in the language employed in making the gift, to exclude his marital rights. (Nimmo v. Davis, 7 Tex. Rep. 26.) The principle which, at common law, governs gifts and conveyances of this nature, is, that, in order to exclude the marital rights of the husband from attaching, and converting the property to his sole ownership, there must be a clear and unequivocal intention manifested by the grantor, in the instrument giving or conveying the property, that the wife shall possess the exclusive interest in the property conveyed. It must be clearly manifest, either that the husband is excluded, or that the wife's control is independent of the husband's power. And so the common law is held by the courts in Mississippi. (Grand Gulf Bank v. Barnes, 2 Sm. & Marsh. Rep. 165 to 184.) The statute of Mississippi of 1839, enacted "for the protection and preservation of the rights and property of married women," effected a change in the law of that State in this respect. (Ibid.) But that Act was not passed until twenty years after the gift in question, and could not affect the rights of the husband to the property previously acquired. His rights had vested and become abso-

lute, long before the passage of the Act. The exchange of the negro for another in his place, in 1840, did not operate a change or transfer of the right of property from the husband to the wife; his right attached in the slave acquired by the exchange: nor can it make any difference, that the exchange was effected through the agency of the wife. The defendant's title to the slave, Zack, appears to be clear and unquestionable; and there is no evidence to support a claim of right or title to this slave by the plaintiffs.

The verdict, in so far, is unsupported by evidence. Moreover, as to hire, the verdict does not distinguish between the hire of this and the other slaves, but is for a gross sum. Should we hold the recovery right, as to the other slaves, we have not the means of knowing what amount of hire the plaintiff is entitled to recover for them. The verdict is not so certain, as to enable us to render judgment for them and their hire.

We think proper to observe, that we do not recognize the propriety of the practice, adopted by the parties in this case, of referring us to "the Codes and Digests" generally of Mississippi and Arkansas, without indicating the particular sections, or provisions of law, on which the parties rely. The provisions of the laws of other States, which were in evidence upon the trial, should distinctly appear by a particular reference; and should either be copied in the record, or accompany it, when the case is submitted for decision.

We think proper also to observe, upon the practice of copying into the record, as a statement of facts, the depositions of numerous witnesses deposing to the same facts, with the commissions, and certificates of the officers, and other irrelevant matters, swelling the record to an inconvenient size, by useless repetitions of the same, and a mass of irrelevant matter; when the material facts might be much more intelligibly presented by a concise statement, as the law requires, and the parties thus saved much unnecessary expense, and the court spared an unprofitable consumption of time, in the examination of the case. What purports to be a statement of facts, in this case,

occupies one hundred and eighty pages of the record, made up, in the main, of the depositions of witnesses, repeating the same matters with unimportant variations, and much of the statements having no material bearing upon the case, but all requiring an examination, in order certainly to ascertain what were the proofs touching the questions discussed by counsel, and which it might be material to consider, in order to a correct determination of the case. It is scarcely necessary to say, that this is not a compliance with either the letter or spirit of the statute; which requires the party giving notice of appeal, "to make out a clear and explicit statement, or bill of the facts" proved upon the trial. (Hart. Dig. Art. 788.) The practice pursued in this case, if allowed, subjects the court to the necessity of virtually performing for the parties a labor, which the law requires them to perform. If the necessary labors of the court were less arduous, a remedy for this abuse might not be necessary. But, as it is, if parties do not see proper to comply with the plain requirements of the statute, in preparing their statement of facts, they will have no cause to complain, if the court should find it necessary, in order to correct the abuse in practice, to decline to recognize anything as a statement of facts, which is not such as the law contemplates.

We think we may well decline to recognize such general references to the laws of other States, and such a presentation of the evidence, as requiring an examination of other questions, which, though not necessarily involved in the present disposition of the case, if properly presented, it might be desirable at present to take some notice of, with a view to its final disposition upon another trial. It will suffice for the present, that there is error in the judgment in the particulars herein before indicated; for which the judgment must be reversed, and the cause remanded.