### R. P. Tendick et al. v. M. B. Evetts et als.
### J. Q. Brooks and James Carlton v. M. B. Evetts et als.

1. It is a recognized canon of construction of wills to ascertain the object, design, or purpose of the testator, by reason and consistency.
2. *Quære:* Whether the rule in Shelley's case is obligatory as applied to wills ?
3. The manifest intention of the testator will control the rule in Shelley's case if in conflict with it.
4. Under a will which recites, "After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give and bequeath to, and dispose of as follows, to-wit, to my sister, Mary A. Stuteville," followed by a description of the property ; after which, "And all the above described property I give and bequeath to the said Mary A. Stuteville, and her heirs, during her natural life," the devisee takes only a life-interest.

ERROR from Colorado. Tried below before the Hon. L. Lindsay.

This case (No. 750) was an action of trespass to try title, brought in the District Court of Colorado county at the Fall Term, 1869, by Milton Evetts, Susan H. Morehead, and her husband, William H. Morehead; Susan H., Polly A., Samuel S., Flint, and William H. Stuteville, minor heirs of Mary A. Stuteville, by their guardian, James C. Stuteville; Martha E. Webb, and Eliza John-

son, and her husband, Daniel Johnson; against Charles Schmidt and Robert P. Tendick, for a part of lot No. 4 in block No. 12, in the town of Columbus.

The plaintiffs claimed the property as heirs of Elizabeth J. Bond, deceased, who died April 25, 1857, leaving the property, by will, to Mary A. Stuteville, who died March 20, 1869.

The controversy is as to the construction of the following clause in the will of Elizabeth J. Bond: "After all my lawful debts are paid, I give and bequeath to, and dispose of as follows, to-wit, to my sister Mary A. Stuteville," which is followed by an inventory and description of the property devised; after which, "And all of the above described property I give and bequeath to the said Mary A. Stuteville, and her heirs, during her natural life."

At the Spring Term, 1870, James C. Stuteville, the husband of Mary A., deceased, and Amanda M. F. Portis, the sister of Elizabeth J. Bond, with her husband, C. D. Portis, made themselves parties plaintiff.

The defendants claimed the land by purchase at the administrator's sale of Reuben Bond (the husband of Elizabeth J. Bond), who had bought of the legatee and her husband, June 10, 1858. Elizabeth J. Bond, at the time of her death, had neither parents or children living, and the plaintiffs sought to recover on the ground that Mary A. Stuteville took only a life-interest in the property under the bequest. The facts, as alleged in the pleadings, were admitted by the parties on the trial, and a jury being waived, the court decreed that "the plaintiffs, Milton B. Evetts, William H. Morehead, and Susan H. Morehead, and C. D. Portis, and Amanda F. M. Portis, do have and recover of the defendants, Charles Schmidt and R. P. Tendick, three-eighths of the following described property."

After describing the property, the decree proceeds :

"The said Milton B. Evetts being entitled to one-eighth, Wm. H. Morehead and Susan H. Morehead being entitled to one-eighth, and Amanda F. Portis and C. D. Portis being entitled to one-eighth, and the plaintiffs having admitted that the improvements placed on said premises are in excess of the value of the rents and profits, it is further ordered, adjudged and decreed by the court that the defendants are not entitled to the value of the excess of their improvements, and E. B. Obenchain, J. W. Middlebrook, M. W. Young, residents of Colorado county, are appointed commissioners to partition and divide the said property herein described among the plaintiffs and defendants in accordance with this decree, and they will report at the next term of this court how they have made said partition.

"And it is further ordered by the court, the plaintiffs, James C. Stuteville, guardian of the minors Samuel S., William H., Polly A., Flint and Susan H. Stuteville, Martha E. Webb, Daniel Johnson and Eliza Johnson and J. C. Stuteville, take nothing by their suit, and that the defendants do have and recover of said plaintiffs all costs of suit in their behalf expended ; and it is further ordered, adjudged and decreed by the court, that the plaintiffs, Milton B. Evetts, William H. and Susan H. Morehead, and C. D. Portis and Amanda F. Portis, do have and recover of the defendants all costs of suit in this behalf expended."

*R. V. Cook*, for plaintiffs in error, contended for the application of the rule in Shelley's case in construing the will; that the limitation in the will to heirs gave Mrs. Stuteville a fee-simple title to the property, and that she, by the deed to Bond, conveyed a like title, citing 4 Kent, 215 ; 2 Jarmon on Wills (Perkins' edition), 176 *et seq.;*

Hancock v. Butler, 20 Texas, 807; Jarvis *et al.* v. Wright, 4 Hawks' N. C. R., 227; Choice v. Marshall, 1 Kelly, 97; Kay v. Carmer, 8 Hump., 624; Polk v. Farris, 9 Yerger, 209; Prescott v. Prescott's Heirs, 10 B. Mon.; Stephenson v. Hagan, 15 B. Mon.; 15 Ohio, 287; Carr v. Porter, 1 McCord Ch., 60; Hawkins v. Lee, 22 Texas; O'Brien v. Hilburn, Id., 617.

*Hunt & Holland, Chesley & Johnson, Foard & Thompson* and *Hancock & West*, for defendants in error, contended: 1. That the words used in the will under consideration do not come literally within the rule in Shelley's case, and that they must be therefore construed, not with regard to the rigid and unyielding conditions of that rule, but so as to give effect to the manifest intention of the testatrix.

2. That the manifest intention was to give Mrs. Stuteville an estate for the term of her natural life, with a vested remainder to the children of Mrs. Stuteville.

3. That she could convey to Reuben Bond no greater estate than she herself possessed, and hence appellants purchased an estate whose duration was measured by the term of the natural life of Mrs. Stuteville.

4. That on her death the fee vested absolutely, discharged of any particular estate, in the children of Mrs. Stuteville.

WALKER, J.—The leading principle involved in these cases was before the court for decision at a former term, in No. 356.

The opinion of the court, possibly from its own want of clearness, seems to have been misunderstood in construing the will of Elizabeth J. Bond. The court meant unequivocally to say that a life-estate was given to Mary A. Stuteville, with a vested remainder to her heirs.

No. 750 was adjudicated in the District Court before our opinion in No. 356 was published. The district judge interpreted the will in No. 750 to create a life-estate in Mrs. Stuteville, with remainder to the heirs of Mrs. Bond, the testatrix.

The heirs of Mrs. Bond are not mentioned in the will. The words "her heirs" plainly refer to the heirs of Mrs. Stuteville.

Had the District Court regarded this as a case coming within the rule of Shelley's case, that court would have interpreted the will as conveying an estate in fee to Mrs. Stuteville. In our view of the will of Mrs. Bond, the testatrix intended that her sister's children, or heirs (for it appears that Mrs. Bond had no children), were in some way to become the recipients of her bounty; otherwise why are they mentioned in her will? Why not give, in express terms, the estate she intended to her sister, without using the word heirs at all ; for this word in a will is not necessary to pass an estate in perpetuity?

But it is clear to our minds that Mrs. Bond intended her devise to her sister should create a life-estate in her ; else why the words "during her natural life?" Can it be for one moment supposed that it was intended by the will that Mrs. Stuteville should take a fee or remainder and her heirs a life-estate *per autre vie ?* Such a construction would give an estate to the heir as the heir during the life of the ancestor, and would confer upon the ancestor the estate at her own death—all of which is simply absurd ; *nemo est hæres viventis*, nor can an estate thus be cast upon one not *in esse.*

In our former opinion, as now, we adopt a primary and necessary canon of construction. The object, design or purpose of the testator, to be ascertained by reason and consistency. (See Rule 13, p. 226, 2 Redfield on Wills.) Possibly we might not have violated common sense to say

that the will of Mrs. Bond made her sister and her sister's children tenants in common for life in the estate devised.

In 1 B. & Ald., 137, Doe *et als.* v. Allcock, the testator devised all his hereditaments to his sister, A. T., and her two daughters, and their heirs and assigns equally, to be divided between them in common for and during the life of A. T., and after her death he divised the third part so devised to his sister for life, to her two daughters in fee. It was held to give the two daughters a fee simple in two-thirds, and the remainder in fee to the other third on the death of the mother. Lord Ellenborough, commenting on this will, said the testator had thrown together a heap of words, the sense and meaning of which he did not clearly apprehend; "but although the language of the will is confused and the words scattered in such a way as, if taken in the order in which they stand, they do not convey any meaning, yet in favor of common sense we may take the liberty of transposing them, according to that order which one may fairly suppose the testator would wish to have adopted, and by which one can best effectuate his intentions."

If this able and upright judge felt himself, in such a case, driven to the lights of common sense, by which to interpret the will in question, we too may be excused for taking what we deem a common sense view of the language of the will under consideration ; the more especially as we believe, aided by authorities and the reasonings of wise judges, we have been enabled to place the law and common sense hand in hand throughout our former opinion. If, in commenting on the rule in Shelley's case and in the authorities referred to, we were not clear in our former opinion, we are not more unfortunate than many greater men have been before us. Chief Justice Parke says : "The rule in Shelley's case by which an estate of freehold is limited to a person, and the same instrument

contains a limitation, either mediate or immediate, to his heirs or to the heirs of his body, the word 'heirs' is construed as a word of limitation, will occur to the reader as a familiar instance of an arbitrary and technical rule of construction, the authority of which is acknowledged by the courts, even where its application may tend to defeat the intention of testator.'' (See Brown's Legal Maxims, 6 Am. Ed., 412.) But here we find, by note five in the margin, that the rule does not apply to any will made or republished since the Statute 1 Victoria, c26, came into operation. Section 27 provides that real and personal property, over which the testator has a power of appointment, shall pass by a general devise or bequest, unless the contrary appear.

Similar statutes have been enacted in most of our States, and we believe it would be a very unpopular doctrine to say that the rule in Shelley's case should be made to override the manifest intention of the testator. Our own court, in Hancock v. Butler, 21 Texas, 804, and Hawkins v. Lee, 22 Texas, 544, have denied the application of the rule in Shelley's case upon a statement of facts very similar to those before us. While it is admitted in those cases that a state of facts may exist to which the rule in Shelley's case would be applied, yet we do not believe that this court has ever been so organized that it would have given the rule in Shelley's case a preference to any other rule of sound legal construction. The rule has had its friends and its enemies, among the former the learned and venerable Chief Justice Gibson and Chancellor Kent; but equally learned and able jurists have denounced the rule as invented to accommodate aristocratic prejudices and interests based upon artificial reasoning and unsound logic. But I apprehend that when a case shall come before this court which invokes the application of the rule in Shelley's

·case, we shall not hesitate to be guided by authority; but it may well be doubted whether, following, as we do, the common law of England as a rule of decision, we are even now bound to recognize the rule in Shelley's case as applied to wills.

We now propose to construe the word heirs in the will of Mrs. Bond as a word of purchase—as the words lawful issue were construed by the court in Hancock v. Butler—believing that any presumption to support the rule in Shelley's case is overborne by the manifest intention of the testatrix in the case before us. Thus we say, if such a construction would defeat the plain intention of the testatrix, we would not hold that a devise to A. B. and his heirs, to be used by A. B. for life, would vest the fee in A. B. under the rule in Shelley's case.

We believe with Redfield, in his treatise on the Law of Wills, Vol. 2, pp. 66, 68, that the American courts have never followed in strictness the English courts in their apparent partiality to the rule making the heir take by descent rather than by purchase; and the popular doctrine in this country as to the rule in Shelley's case is, that when it is used to define the character of the estate which it is intended to vest in the first taker, then the word "heirs" shall be construed as a word of limitation; but when it is used to designate certain persons who are to become the beneficiaries of the deed or will, such persons take as purchasers, and so strong has been the popular antipathy to this rule that where the courts have carried it beyond the boundary thus laid down the Legislatures have repealed it.

We have no question in our minds but that the word "heirs," as used by Mrs. Bond in her will, is used as a *descriptio personarum*, and she intended to apply it to the children of her sister, Mrs. Stuteville.

Having said thus much, we hope our former opinion

will be understood, and the question will be regarded as *res judicata.*

If we have added nothing, we are not conscious of detracting anything from, the "accumulated treasures of learning."

Before leaving this branch of the case it may not be improper for us to say that the newspaper versions of the opinions of this court, though generally correct, are not always so ; nor do we consider ourselves forestalled from correcting errors in our opinions by what newspapers say of us. Whether we stand well or ill with the periodical press, we believe we have heretofore tried and shall in future try to discharge our duties impartially, and with our best intelligence, without regard to favor or criticism.

In our examination of case No. 356 we omitted to notice that Mrs. Stuteville had conveyed the property in question to Reuben Bond, and of course had given no opinion as to the estate she had conveyed. Our attention was subsequently, at the same term of the court and but a few days after the delivery of the opinion, called to the omission. A motion in writing was made by one of the counsel in the case, and the correction was made promptly from the bench. The appellant's counsel were not present in court, nor did the rules of this court then require notice to adverse counsel.   ·

Another question of importance, that of improvements, is raised upon these records.

Ordinarily the tenant of a particular estate cannot charge the remainder-man with improvements ; and the authorities cited by appellees in their brief apply to the cases where the tenant for life knows definitely the nature and duration of his estate ; but in this case the facts are different.

Those who hold through the deed from Mrs. Stuteville

to Reuben Bond did not understand the nature of their tenure; but, in all probabilty, believed themselves to be the owners of the fee-simple. Their improvements, then, could not otherwise than have been made in good faith, and they are entitled in equity to be paid for their improvements, and are subject to be charged the reasonable value of rents and profits.

In No. 775 it is claimed that there was a compromise; but this plea of compromise was dismissed on exception, and is not even attempted to be set up in No. 750. As the plea was wholly insufficient in law, we deem it unnecessary to be further noticed.

In No. 750 the judgment of the District Court is reversed and remanded, to be proceeded with in accordance with this opinion.

In No. 775 the judgment of the District Court is affirmed.

AFFIRMED.