**BARMORE v. DARRAGH et al. (No. 6574.)**

(Court of Civil Appeals of Texas. San Antonio. March 30, 1921. Rehearing Denied June 1, 1921.)

**1. Wills ⟨key⟩470—All provisions looked to in ascertaining testator's intention.**

All the provisions of a will should be looked to in ascertaining the testator's intention.

**2. Wills ⟨key⟩601(1)—Statute does not prohibit subsequent provision from limiting absolute estate previously given.**

The rule that an absolute disposition may be limited by a subsequent clause in a will, where the intention is clearly expressed, is not affected by Rev. St. 1911, art. 1106, raising a presumption of fee-simple devise, "if a less estate be not limited by express words."

**3. Wills ⟨key⟩545(3)—Devise over on devisee's death effective only on devisee's predeceasing testator.**

A provision in a will that an estate shall take a certain course in case of the death of a named person operates only in case the person's death occurs before testator's death; but such rule is inapplicable where, after an absolute devise, the contingency named whereby the estate devised should go to devisee's sister was not his death merely, but his death "before his sister * * * without heirs of his body."

**4. Wills ⟨key⟩608(1)—Rule in Shelley's Case held inapplicable.**

The rule in Shelley's Case is directed against a devise over to the "heirs" of the first taker, and hence is inapplicable to an absolute devise followed by a provision that if the devisee should die before his sister and without heirs of his body the estate shall go, not to his heirs, but to his sister.

**5. Wills ⟨key⟩545(3)—Devise held to give life estate; "in case"; "without heirs of his body."**

Where an absolute devise was followed by a provision that "in case" devisee died before his sister without "heirs of his body" his share should go to his sister, the devisee, on surviving the testator, did not take title absolutely but on his death without issue the devise over to his sister, if living, would take effect; "in case" meaning "in the event," and "without heirs of his body" meaning "without issue."

[Ed. Note.—For other definitions, see Words and Phrases, In Case.]

**6. Wills ⟨key⟩457—To effectuate intention, words may be given other than technical import.**

In harmonizing conflicts to effectuate the ascertained intention of the testator, words and

phrases may be given meanings other than their technical import.

**7. Wills ⟨key⟩447—Construction consistent with lawful intention adopted.**

Where words or phrases are susceptible of two constructions, one consistent with an intention to do that which the testator may lawfully do, and the other consistent with an intention to do that which he may not lawfully do, the one construction will be adopted and the other rejected.

**8. Wills ⟨key⟩439—Intention not to be conjectured.**

Courts must not indulge in and give effect to mere conjecture as to the intention of a testator, since to do so would be assuming the power to make rather than to construe the will.

**9. Wills ⟨key⟩495, 506(4)—Clause held to give remainder to children of devisee of life estate; "heirs of his body"; "issue of his own body"; "inherit"; "take."**

Where an absolute devise was followed by a paragraph, the first clause of which directed that the estate devised should go to devisee's sister if she survived him dying without "heirs of his body," and the second clause of which provided "but if he dies leaving issue of his own body then his said heirs shall inherit" his estate, such second clause was an alternative of the first clause, and would be given effect as giving the property, in case devisee was survived by issue of his body, to those of such issue who were living at his death; "heirs of his body" and "issue of his own body" being construed to mean simply "children," and "inherit" to mean "take," although technically "inherit" is a word of limitation, and "take" is a word of purchase.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Issue of the Body; First and Second Series, Heirs of the Body; Inherit; Take.]

**10. Wills ⟨key⟩538—Devise over on death of another is presumed to refer to death before testator's death.**

A clause in a will devising over to another an estate given to testatrix's daughter in fee by a previous clause, "in case of the death" of the daughter and her named child, impliedly conditioned the devise over upon the death of the daughter and her child before testatrix's death, so that where the daughter and her child survived testatrix the devise over lapsed.

**11. Wills ⟨key⟩601(1)—Clause following absolute devise held to give devisee life estate with remainder to surviving children.**

Where an absolute devise was followed by a provision that in case the devisee at her death shall leave children, "which includes B. [her child by a former marriage], her children shall inherit her estate, share and share alike," the devisee was limited to a life estate with remainder over to those of her children who might survive her; the clause "which includes B." being treated as surplusage and ineffective, and the provision that the property should pass "share and share alike" being

conclusive of testatrix's intention that it pass by purchase, not by limitation.

**12. Wills ⬦467—Direction for education of grandchild held precatory.**

A clause in a will, following devises of life estates in the property to testatrix's son and daughter, in which testatrix enjoined them to "take care of B. [the son of the daughter by a former marriage] and properly educate him, to be paid for out of the estate which I give to my said two children * * * until the said B. shall have received his education," was precatory merely; it being left to the will of the son and daughter whether its provisions should be regarded.

**13. Wills ⬦649 — Clause restricting giving away of estate received under will held void.**

A clause in a will directing that the rights that a beneficiary receives under the will shall revert to others, if he gives any of the estate he inherits under the will to any of certain named kin, is void.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by John Greenleaf Darragh and others against John Darragh Barmore. From judgment for plaintiffs, defendant appeals. Reversed and rendered.

See, also, 227 S. W. 522.

J. Ed. Wilkins, of San Antonio, for appellant.

Cobbs, Blankenbecker & Wiggin, of San Antonio, for appellees.

SMITH, J. Annie Pendleton Shepherd Darragh, a widow, died testate on December 15, 1918, leaving an estate consisting of very valuable property, which was sought to be disposed of in a will which was probated on January 8, 1919. To obtain a construction of that will, this suit was instituted by John Greenleaf Darragh and Mabel Darragh Jenkins, son and daughter, respectively, and the only children, of the said Annie Pendleton Shepherd Darragh, against John Darragh Barmore, minor son of Mabel Darragh Jenkins by a former marriage. John L. Jenkins, present husband of Mabel Darragh Jenkins, joined his wife as a party plaintiff in the suit. The will in question, omitting formal parts, reads as follows:

"First: I give and bequeath to my beloved children, John Greenleaf Darragh and Mabel Darragh Jenkins, all of my estate, real, personal and mixed, choses in action, bonds and securities and moneys of whatever kind or character, wheresoever situated, share and share alike, except as hereinafter specially provided in reference to certain personal property.

"Second: I give to my daughter, Mabel Darragh Jenkins, all of my household and kitchen furniture, linens and furnishings, beds, bedding, crockery ware, glass ware, silver ware, cooking utensils and everything pertaining to kitchen and household use, also all of my personal effects, clothing, etc., all jewelry, ornaments, etc., except one certain topaz ring that was my husband's which I give to my son, John Greenleaf Darragh, together with a certain diamond stick pin with colored stone, which I likewise give to him.

"Third: I give to my said two children jointly all the dining room furniture, to be divided equally between them, the manner of division shall be agreed upon by them; and I also further give to my son, John, the right to select any one or two pieces of china and one or two pieces of silver ware.

"Fourth: In case John Greenleaf Darragh dies before his sister, Mabel Darragh Jenkins, without heirs of his body, all of his portion of the estate shall go to my said daughter, Mabel Darragh Jenkins; but if he dies leaving issue of his own body, then his said heirs shall inherit his portion of said estate.

"Fifth: In case of the death of my daughter, Mabel Darragh Jenkins, and in case of the death of John Darragh Barmore, her child, then the said John Greenleaf Darragh, if living, or his heirs, as hereinabove stated, shall take her estate; but in case that the said Mabel Darragh Jenkins at her death should leave children, which includes John Darragh Barmore, her children shall inherit her estate, share and share alike.

"Sixth: I give and bequeath to John Darragh Barmore, child of Mabel Darragh Jenkins, his grandfather's watch, and to John Greenleaf Darragh, my son, his father's gold watch chain.

"Seventh: It is the wish and is so enjoined upon John Greenleaf Darragh and Mabel Darragh Jenkins, that they shall take care of John Darragh Barmore and properly educate him, to be paid for out of the estate which I give to my said two children, John Greenleaf Darragh and Mabel Darragh Jenkins, until the said John Darragh Barmore shall have received his education. It is understood that whatever rights John Darragh Barmore receives under the provisions of this will shall lapse and revert to my said children or their heirs, in case he gives any part whatsoever of the estate he inherits hereunder to any of his Barmore kin, including his father and grandfather.

"Eighth: I hereby appoint John Greenleaf Darragh and Mabel Darragh Jenkins my executors of this my last will and testament and direct that my estate be administered without the intervention of any proceedings of any court, and that no action be taken in any court in the administration of my estate other than by probating this will and filing such inventory as the law requires.

"I further direct after probating said will the said estate shall be closed and no further proceedings shall be had therein; and I further direct that no bond or other security shall be required of my said executors and that they administer the same without bond."

Upon a hearing before the court without a jury, the lower court found, among other essential facts not material here, that John Greenleaf Darragh and Mabel Darragh Jenkins were the only children of testatrix;

that John Greenleaf Darragh is unmarried and without issue, and that John Darragh Barmore, appellant herein, is the only child of Mabel Darragh Jenkins, and was born to her of a former marriage. The court further found that it was the intention of testatrix to leave her real property to appellees John Greenleaf Darragh and Mabel Darragh Jenkins, share and share alike. Upon these findings of fact the court concluded, as a matter of law, that the will should be construed to vest in appellees, share and share alike, the fee-simple title to all the real property of testatrix at her death, and that any declarations or expressions used in the will that might be construed to limit the purpose to create a fee-simple title in appellees were null and void, as repugnant to the fee-simple title, and that it appeared from the entire will and from the testimony relative thereto that it was the intention of the testatrix to vest the absolute title in appellees. Upon these conclusions the court rendered judgment for appellees, vesting absolute title in them, and from this judgment John Darragh Barmore, through his guardian ad litem, brings this appeal.

Although it may be inferred from the trial court's conclusions that parol evidence was introduced upon the trial, no statement of facts appears with the record, from which we assume that the only evidence actually introduced was the will itself. However, we can conceive of no parol testimony that should be given the effect of modifying or destroying the intention of the testatrix as expressed in the instrument, and if the finding of the court is in conflict with the intent as expressed in the will, such finding will be disregarded here.

Appellant's contention as to the meaning of the will is set forth in the first and only proposition contained in his brief, which is as follows:

"Paragraph 1, taken in connection and with the limitations placed thereon by paragraphs 4, 5, and 7 of the will convey to John Darragh a qualified defeasible fee subject to be defeated upon his death without issue and convey to Mabel Darragh Jenkins only a life estate."

Appellees contend that under the terms of the will the fee simple to the whole of the estate, together with full power to convey, passed to John Greenleaf Darragh and Mabel Darragh Jenkins, share and share alike, immediately upon the death of the testatrix.

Appellant in his brief asserts only the one proposition quoted, cites only two authorities, and only meagerly discusses his proposition. Appellees, however, have gone very thoroughly into the whole case and the authorities bearing thereon, and we find it convenient to consider and discuss the question involved along the lines and in the order they are so fully presented by appellees.

The will must be so construed as to effect the purposes of the testatrix, if this can be done without contravening any established rule or statute. Let us see where that course will lead us in this case:

If we consider paragraph 1 of the will alone, title to the whole property must vest absolutely in Mabel Darragh Jenkins and John Greenleaf Darragh, share and share alike. But this would have occurred, exactly, had there been no will at all, since the statutes provide for just such disposition in the absence of a will. Accordingly, the making of the will would have been a perfectly futile thing, unless the testatrix had some further purpose to effect. Was this further purpose the disposition of certain personal property belonging to testatrix? If that was all, then such purpose was fully effectuated in paragraphs 2, 3, and 6, which serve no other purpose and have reference to no other part of the estate. And paragraph 8 provides in the usual way for the appointment of executors, and serves no other purpose.

Paragraphs 1, 2, 3, 6, and 8, then, within themselves, constitute a will that is complete and sufficient for the purpose of disposing of all the real, personal, and mixed property belonging to the estate, and for the administration thereof. If there had been no will the statutes would have made exactly the same disposition of the estate, except as to the peculiar division of the household goods and heirlooms. And if there had been no will, the probate court, under the statute, would have appointed as administrators of the estate either or both of the very executors named in the will, although it would not, of course, have relieved them of the trouble of making bond. Accordingly, if we give effect only to paragraphs 1, 2, 3, 6, and 8 of the will, the only purposes thereof were to divide in a particular way the household goods and heirlooms, and relieve the children of testatrix of the necessity of making bond as executors of the large estate involved. When we read the entire instrument, it seems to us to be obvious that the will was not solemnly made for such trivial purposes alone.

But, if such were the only purposes of the will, or even if there was the added purpose to direct the doing of things already provided for and required by the law, then either and all of such purposes were very fully and clearly effectuated in paragraphs 1, 2, 3, 6, and 8, and nothing further could have been written to strengthen or elucidate them.

These conclusions bring us to a consideration of the remaining provisions of the instrument, embraced in paragraphs 4, 5, and 7. If the only purpose in the mind of the testatrix, in making her will, was to devise to her two children the fee in the entire estate, as contended by appellees, then why did she add these further provisions? Any good-faith ef-

fort to ascertain the intention of testatrix must embrace a consideration of the whole instrument and every provision and clause therein, and it will not do simply to ignore the provisions in the three paragraphs mentioned. They must be read and considered in connection with all the other provisions, and they must be given effect, unless, indeed, to do so will contravene the law. If they are in real or apparent conflict with other provisions of the will, they must be harmonized therewith, if that can be done, since the law imposes upon the courts the solemn duty of putting into effect the expressed objects in the mind of the testatrix.

And, first, we will look at the fourth paragraph of the will, which provides:

"In case John Greenleaf Darragh dies before his sister, Mabel Darragh Jenkins, without heirs of his body, all of his portion of the estate shall go to my said daughter, Mabel Darragh Jenkins; but if he dies leaving issue of his own body, then his said heirs shall inherit his portion of said estate."

It must be borne in mind that in the first paragraph of the will testatrix had definitely and clearly devised to her son a full half interest in the estate, without any exception, reservation, or limitation, except as to certain personal property, the disposition of which in subsequent paragraphs is clear and is not to be questioned. But now, in the fourth paragraph, the provisions of the instrument return to the subject of disposition of the estate, and very clearly show an intention on the part of the testatrix to resume or continue control of the property not specifically disposed of in the second, third, and sixth paragraphs, in which the absolute devise in the first paragraph is confirmed as to certain personal property, and direct in detail the course of its disposition. And having arrived at this close-up view of the intention of testatrix, it becomes obvious, it seems to us, that she did not intend that her son should have the power of alienating his portion of such estate, but the same should remain intact and pass on to his sister upon his death without living issue of his body.

The fifth paragraph of the will provides:

"In case of the death of my daughter, Mabel Darragh Jenkins, and in case of the death of John Darragh Barmore, her child, then the said John Greenleaf Darragh, if living, or his heirs, as hereinabove stated, shall take her estate; but in case that the said Mabel Darragh Jenkins at her death should leave children, which includes John Darragh Barmore, her children shall inherit her estate, share and share alike."

Here again the testatrix evidences an intention, as in the case of the devise to her son, to preserve intact the portion of the estate devised to her daughter, so that upon the latter's death the same should pass to her children. The language of the provisions of this paragraph differs very materially, if strictly construed, from the language of the corresponding provision with reference to the portion of the estate sought to be devised to John Greenleaf Darragh, and yet it is apparent that it was the intention of testatrix to pass the estate on through each of her children upon the same terms and conditions, and with the same limitations and restrictions, and that intention should be respected if the law will so permit.

The seventh paragraph of the will provides:

"It is the wish and is so enjoined upon John Greenleaf Darragh and Mabel Darragh Jenkins, that they shall take care of John Darragh Barmore and properly educate him, to be paid for out of the estate which I give to my said two children, John Greenleaf Darragh and Mabel Darragh Jenkins, until the said John Darragh Barmore shall have received his education. It is understood that whatever rights John Darragh Barmore receives under the provisions of this Will shall lapse and revert to my said children or their heirs, in case he gives any part whatsoever of the estate he inherits hereunder to any of his Barmore kin, including his father and grandfather."

The first clause of this paragraph is, of course, plain enough and amounts, in effect, simply to a request of the children of testatrix to see to the education of the grandchild, John Darragh Barmore, to be paid for out of the estate in question. Appellees contend that this clause has a tendency to confirm the absolute devise in the first paragraph in that testatrix here refers to "the estate which I give to my two said children, John Greenleaf Darragh and Mabel Darragh Jenkins." But if that is the effect of this reference, it is more than overcome by the further references in the second clause of the same paragraph to "the rights John Darragh Barmore receives under the provisions of this will," and to "the estate he inherits hereunder." In so far as it has a hearing upon the question of the intention of testatrix, it may be said that the seventh paragraph, taken as a whole, indicates that while she desired her two children to have the use and benefit of the estate, testatrix did not want it to get beyond the reach of this grandchild. The direct purpose of the seventh paragraph, however, was, of course, to request that John Darragh Barmore be educated, and to prevent any part of the estate from passing through him to his Barmore connections.

To sum up the purposes which we think were in the mind of testatrix when she made her will, we find that she desired her children, John Greenleaf Darragh and Mabel Darragh Jenkins, to use and enjoy, upon equal terms, the whole of the estate so long as they each lived, but that this estate should remain intact, and, except the personal property in which the fee is specifically confirmed

in the second, third, and sixth paragraphs, should pass to the children of said devisees; and, further, that if either John Greenleaf Darragh or Mabel Darragh Jenkins should die without children, then his or her portion of such estate should pass to the other.

Appellees urge that the devise of the certain personal property mentioned in paragraphs 2, 3, and 6 of the will must take the same course as the devise of all the balance of the estate; that the first paragraph is an absolute devise of the whole estate; and that if we should hold (as appellees significantly surmise we will do) that the devise of the estate other than the articles mentioned in those paragraphs is limited by paragraphs 4 and 5, then we must hold also that the limitations apply with equal force to the kitchen utensils, etc., specifically distributed in paragraphs 2, 3, and 6. But this position is in our opinion insupportable, notwithstanding its apparent logic. We think the testatrix sought in paragraphs 2, 3, and 6 to except the articles therein mentioned from the operation of the provisions of paragraphs 4 and 5. This is made obvious, we think, by the very nature of those articles, by the significant fact that testatrix singled them out, and, reiterating the gift in fee, specifically distributed them in a peculiarly appropriate way among the devisees, and by the further fact of the omission of any provision for a subsequent devise over as to these articles. The provisions of paragraphs 2, 3, and 6 are, as to the articles mentioned, confirmatory of the absolute devise in paragraph 1, while the provisions of paragraphs 4 and 5 are in positive derogation thereof.

Having ascertained as best we could the intention of the maker of the will, it becomes the duty of the court to give effect to this intention, if that can be done with due respect and regard to public policy, to the common law, and to the statute law of the state. Appellees urge that the language of paragraphs 4 and 5 is confused and of doubtful import, and the purposes thereof obscure, and cannot serve to limit the devise so clearly expressed in the first paragraph. While it is true that the language of this paragraph is peculiar, to say the least of it, we think that the intention of the testatrix as therein expressed is unmistakable and enforceable.

So, keeping in mind the first paragraph of the will, in which the testatrix devises her estate in equal shares to her two children, and paragraphs 2, 3, and 6, in which the fee in certain personal property is confirmed by specific distribution, we pass on to a construction, in their order, of the fourth and fifth paragraphs, the provisions of which give rise to this litigation. The fourth paragraph will be quoted again:

"In case John Greenleaf Darragh dies before his sister, Mabel Darragh Jenkins, without heirs of his body, all of his portion of the estate shall go to my said daughter, Mabel Darragh Jenkins; but if he dies leaving issue of his own body, then his said heirs shall inherit his portion of said estate."

Appellant, John Darragh Barmore, contends that this provision, taken in connection with and as a limitation upon the first paragraph, conveys to John Greenleaf Darragh a qualified defeasible fee in the estate, subject to be defeated upon his death without issue. Appellees urge, on the contrary, that, whether so intended by testatrix or not, the provisions of this paragraph cannot operate as a limitation upon the fee passing directly to John Greenleaf Darragh under the first paragraph. Appellees base this contention upon several contentions, which will be now considered.

[1] First, it is urged that the first paragraph of the will "creates an absolute estate in fee simple," and that "a subsequent paragraph which attempts a limitation over to another upon the absolute estate already devised is repugnant to and inconsistent with the absolute property in the first devisees and is void." It is true that the first paragraph, when taken alone, and ignoring all the other provisions of the will, creates an estate in fee simple in the named beneficiaries. But we are not permitted to look alone to the first or any particular paragraph of the instrument, or to ignore any provision or provisions, or all the provisions but the first or any particular one. We must look to all the provisions when we set about in good faith to ascertain the intention and give effect thereto. This rule, now thoroughly settled by the decisions, is well stated by Mr. Justice Stayton, in McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412, and quoted with approval by Chief Justice Gaines in Dulin v. Moore, 96 Tex. 135, 70 S. W. 742:

"In construing the will all of its provisions should be looked to for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will, which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument."

[2] In support of their proposition now under discussion, appellees cite a number of authorities, including article 1106, R. S., as follows:

"Every estate in lands which shall hereafter be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

We do not, by any means, undertake to question the value or justice of this provision of the statute. But we do not regard

it as material here, because it appears to us that the limitations in the fourth paragraph of the will are in fact by "express words," the meaning and purpose of which are unmistakable. The rule embraced in article 1106 is after all but the rule of the decisions, and while it is followed in some of the authorities cited by appellees, none of them goes further than the statute in question. Let us quote further from McMurry v. Stanley, supra:

"There are cases that hold that an absolute power of disposition, given to the first taker for his own benefit, renders a subsequent limitation void for repugnancy, and the decisions were made by courts for whose opinions we have the highest respect. We, however, doubt the propriety of applying such an arbitrary rule in the construction of testamentary papers, for it would often defeat the intention of a testator, as clearly expressed as may be the intention to confer on the first taker a particular estate, with power to dispose of a part or the whole of the property. At most it is but a rule, technical in its nature, based upon the presumed intention of a testator, which ought never to be given a controlling effect when, by the clear language of a will, it appears that the testator did not intend that the first taker should have an absolute estate in fee for his own use and benefit. Any other ruling may make the intention of a testator to depend on a presumption of fact, when the testator, by his own language, has made his intention clear and thus left no occasion for indulging in presumptions.

"It is always dangerous to adopt arbitrary rules for the construction of testamentary papers. It is no doubt true that, when an estate is given in one part of a will, in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate. As said by the Court of Appeals of New York: 'The rule that a limitation over to one cannot be based upon a primary devise of an absolute estate to another is founded entirely upon the supposed intention of the testator. When provisions are irreconcilably conflicting, one must give way to the other, and that must be adopted which seems to accord most clearly with the testator's primary object in executing the instrument; but when, by limiting the character of the first estate, the second may also be preserved, it is clearly the duty of the court to do so, unless such a construction is subversive of the general scheme of the will, or forbidden by some inflexible rule of law.' Wager et al. v. Wager, 96 N. Y. 174."

[3] Appellees' next proposition is best stated by quoting it:

"Where, as in this case, the absolute title to the real property is devised to appellees in fee simple by the first paragraph of the will, the devise over in case of their death which is provided for in the fourth and fifth paragraphs is, upon well-settled principles of law, construed to mean the death of the appellees occurring during the lifetime of testatrix. Since, however, appellees survived the testatrix, the limitations and contingencies provided for in the fourth and fifth paragraphs of the will are read out of the will, and the will is to be construed as if said paragraphs were not contained therein."

It is true that where it is provided in a will that an estate shall take a certain course "in case of the death of" a named person, the courts now construe such words to mean "in case such person dies before the testator dies." St. Paul's Sanitarium v. Freeman, 102 Tex. 376, 117 S. W. 425, 132 Am. St. Rep. 886; Johnston v. Reyes, 183 S. W. 7. This holding is now the established rule, and the contention of appellees is undoubtedly correct, in the abstract. But the provision in the fourth paragraph of the Darragh will does not furnish a concrete example for the application of this rule, because here the contingency named is not merely "in case John Greenleaf Darragh dies," but is "in case John Greenleaf Darragh dies before his sister, Mabel Darragh Jenkins, without heirs of his body." The contingency contemplated, then, is not merely the death of John Greenleaf Darragh, which is not a contingency at all, but a certainty, but comprises two events, to wit: (a) The death of Darragh prior to the death of his sister, and (b) his death without heirs of his body, neither of which events is certain, and neither of which has yet occurred. St. Paul's Sanitarium v. Freeman, supra.

[4] In connection with the phase of the case now under discussion, appellees have much to say of the rule in Shelley's Case, which they ingeniously invoke to support their contention that under the terms of the will the estate was conveyed in fee simple to appellees. While it is true that this venerable rule has not always met with a cordial reception into the jurisprudence of Texas (Tendick v. Evetts, 38 Tex. 275), and that in even a comparatively recent case the Supreme Court of the state recommended to the Legislature that it be repealed (Lacey v. Floyd, 99 Tex. 112, 87 S. W. 665), it has nevertheless finally found a secure place in that jurisprudence; and while its application may in some cases work hardships, sometimes real but more often merely apparent, it is just as firmly a part of our system as if it had been crystallized into a statute. It has been said somewhere that, as a matter of fact, the rule was created for the purpose of obstructing, rather than effectuating, intention; but that may be said of almost any rule of law, as this is. It is not a rule of construction, or of intention. It is essentially a wise rule, for, while it has been buffeted about by the Legislatures and courts of many lands, and railed at and berated through all that period it has nevertheless survived for more than half a thousand years. But this rule does not apply to the fourth paragraph of the Darragh will, as appellees urge upon us. We think that

under that paragraph of the will the course of the devise is affirmatively deflected from a conflict with the rule in Shelley's Case. That rule is directed against a devise over to the heirs of the first taker. And if in the first clause of the fourth paragraph it had been provided that in event of the death of Darragh, the ancestor, before the death of his sister his heirs should take the estate, the rule in question would apply. But that is not the case here. On the contrary, the provision is that if Darragh should die before his sister and without heirs of his body the estate shall go, not to his heirs, but to a named beneficiary, to wit, his sister, and the rule in Shelley's Case is thus avoided.

[5] In their original brief appellees treat as one the two clauses of the fourth paragraph of the will, but in their more extended supplemental brief or argument they treat the two clauses separately, as we think must be done. Let us analyze these clauses for a moment: The first provides that if John Greenleaf Darragh dies without heirs of his body, his sister, Mabel Darragh Jenkins (if living) shall take his part of the estate. That clause completely provides for the contingency described, and must be tested by its own terms in determining its validity, notwithstanding the requirement that the second clause, as well as all the other parts of the instrument, must be looked to in aid of construction and in determining intention. The first clause, then, provides, simply and unmistakably, that if John Greenleaf Darragh dies before Mabel Darragh Jenkins, and "without heirs of his body," then Mabel Darragh Jenkins shall take the estate given him in the first paragraph of the will. The provision is complete, and, in our opinion, valid, and must be given effect in accordance with the clear intention of the testatrix. The second clause provides that if John Greenleaf Darragh "dies leaving issue of his own body, then his said heirs shall inherit his portion of the estate." This provision is intended, obviously, as an alternative course for the estate to take if it should be deflected from the course fixed in the first clause because of the failure of the basic contingency therein provided for—the death of Darragh before that of his sister. The second clause, when considered alone, raises innumerable questions, both of intention and construction, but when considered in connection with the first clause becomes more simple. What is meant, in the first clause, by "heirs of his body"? And in the second by "issue of his own body"? And by "inherit"? And by "his said heirs"? Surely, by "heirs of his body" testatrix did not mean to describe that class of persons who by inheritance take in succession from generation to generation, which is the technical meaning of the phrase when considered alone and without reference to the context of the instrument in which it is used.

It has been said that these words may have a double import—one, an import of designation, by which it is intended to elect those heirs in being at the time of the death of the first taker; and the other an import of inheritance, meaning descendants through all future time so long as there are any. Moreover, the term may be construed to mean, simply, children, if it is apparent from the context of the instrument in which it is used that such was the intention of the testator. Simonton Case, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824. The same may be said of the term "issue of his own body," as used in the second clause of the fourth paragraph. Undoubtedly, the testatrix had in contemplation the same heirs when she used these expressions. The second clause, as stated, is an alternative of the first clause; in the first it directs a course in the absence of certain heirs, and in the second directs another course in the presence of certain heirs. Of course, the same heirs were in contemplation in both instances. And in the second clause it is provided that if Darragh dies leaving "issue of his own body" then his said heirs "shall inherit," etc. To what "heirs" does testatrix refer? The word "heirs" is used in the first clause, but not in the second. Unquestionably, she had reference, however, to the "heirs" mentioned in the first clause and to the "issue" mentioned in the second clause; throughout the paragraph she had in mind the same heirs, whoever they were. And there is the word "inherit" in the second clause of the fourth paragraph. Is it not probable that she means that in the event provided for in this clause the heirs testatrix had in mind should "take" rather than "inherit" the estate referred to? And yet the respective meanings of the two words are different and in legal effect in irreconcilable conflict. "Inherit" is a word of limitation; "take" is a word of purchase. A testator can direct who shall "take" an estate; but he cannot say who shall "inherit" it. If the testatrix here used the word "inherit" advisedly, then she undertook to do that which in law she could not do; if she inadvertently used it in the place of the word "take," then she was doing that which the law permitted her to do.

[6-8] The courts may, as we have said, look at the context of a will when in search of the intention of the testator in case of ambiguity or uncertainty, and upon ascertaining such intention may harmonize and reconcile inconsistencies and apparent conflicts, and in accomplishing these objects may give to words or phrases meanings other than their technical import. When the intention is clearly ascertainable, the courts will go far in rearranging and modifying words and phrases in order to effectuate that intention, and where such words or phrases are susceptible of two constructions, one consistent

with an intention to do that which the testator may lawfully do, and the other consistent with an intention to do that which he may not lawfully do, the one construction will be adopted, and the other rejected. Hancock v. Butler, 21 Tex. 804. On the other hand, however, the courts must not indulge in and give effect to mere conjecture as to the intention of a testator; that would be assuming the power to make, rather than construe, the will. Philleo v. Holliday, 24 Tex. 38. Now, with these general principles in view, we will endeavor to state our conclusions as to the meaning and effect of the fourth paragraph of the will in question, which for convenience we will restate:

"In case John Greenleaf Darragh dies before his sister, Mabel Darragh Jenkins, without heirs of his body, all of his portion of the estate shall go to my said daughter, Mabel Darragh Jenkins; but if he dies leaving issue of his own body, then his said heirs shall inherit his portion of said estate."

The primary intention of the testatrix was, obviously and of course, to keep the estate in her children and grandchildren. Her first step to that end, as expressed in the first clause, was to provide that if John Greenleaf Darragh should die before his sister, Mabel Darragh Jenkins, and without heirs of his body, all of his portion of the estate should go to his said sister. We think, as to this clause, the case comes squarely under the decision in St. Paul's Sanitarium v. Freeman, supra, and that, surviving the testatrix, John Greenleaf Darragh did not take title absolutely, but that on the condition of his death without heirs of his body the devise over to Mabel Darragh Jenkins, if living, will take effect. In the Freeman Case, one Julian Reverchon was the testator, and after his death Freeman, the first taker, who had never married, brought suit, as Darragh has here done, to have the will construed and to determine the question of whether he was entitled to a fee-simple title in the devised property, or whether the estate he held in the property was subject to be defeated by his death without issue. In the second paragraph of his will Reverchon devised all his property in fee to Freeman, but in a subsequent paragraph it was provided that—

"In the event the said Robert M. Freeman shall die without issue, then * * * all of my said property willed as aforesaid (shall) be given to" the sanitarium.

The clause of the Darragh will now under consideration provides that "in case"—which means "in the event"—"John Greenleaf Darragh dies before his sister, without heirs of his body"—which as here used means the same as "without issue"—"all of his portion of the estate shall go to my said daughter, Mabel Darragh Jenkins." It is obvious that the purpose, effect, and meaning of the two provisions are identical. In each instance it is provided, simply, that in event of the death of the first taker without issue the estate shall go to the second taker. The question now under discussion was the only question before the court in the Freeman Case, except one of construction of an incidental phrase, which is also in point here. The opinion in that case, written by Chief Justice Gaines, is thoroughly applicable to and decisive of the question here, and it was there held that should Freeman die at any time without issue the limitation over to the sanitarium shall take effect, and the judgment of the trial court that Freeman was entitled to the property in fee simple was reversed and rendered. In deference to that decision we hold, then, that the effect of the provisions of the first paragraph and the first clause of the fourth paragraph, when construed together, as they must be is not to pass the fee simple to John Greenleaf Darragh upon the death of testatrix, but that upon the condition of his death without issue the limitation over to Mabel Darragh Jenkins will take effect. In so holding, we are not unmindful of the earnest reasoning of counsel, and the great care and ability with which they have presented their contention that Mrs. Darragh intended and the effect of the law requires that her son should, upon her death, be vested with the fee simple to the estate devised. Such an intention could not have been better expressed than by designedly omitting this clause from the will; but, the clause being present, and designedly so, it cannot be ignored, but must be considered, and if its purpose can be lawfully effected that must be done.

[9] This brings us to the second clause of the fourth paragraph of the will. Primarily, it is the alternative of the first clause, which provides for disposition of the estate if Darragh die without leaving heirs of his body, and stipulates that if Darragh dies "leaving issue of his own body, then his said heirs shall inherit his portion of said estate." If this clause is considered alone, without testing its purposes by reference to any other provisions of the will, it would probably come within the rule in Shelley's Case, and therefore be without effect. We have endeavored to show that it was the apparent purpose of testatrix that the estate should go to her two children for their use and enjoyment, and upon the death of either without children, or living issue of the body, as the case may be, the corpus of the estate should pass to the survivor, but in case of children in one case, and of living issue of the body in the other, such children or issue should take the estate of their respective ancestors. And the question is, Can this purpose be given effect under the peculiar language of this clause? If given their general signification, the words "issue of his own body" are words

of limitation, and not of purchase, and in this case would offend the rule in Shelley's Case. On the other hand, if the testatrix intended the words to designate the bodily issue of John Greenleaf Darragh who may be in being at the time of his decease, then the provision does not so offend. In the one case the intention is to do that which cannot lawfully be done; in the other the intention is to do that which can lawfully be done. Are the words as here used susceptible of the last construction, that is, may these words reasonably be construed to designate, and give the property to, persons in being at the time of the death of John Greenleaf Darragh; such persons being the issue of the latter's own body? We think so. Without reference to the general purposes of the testatrix as disclosed by the whole will, which we think favors such construction, the very language of the clause embracing these words, "if he dies leaving issue of his own body," imports such meaning, and raises the presumption that she did not mean to make the devise over to a class of persons who take in succession from generation. to generation. These observations bring us inevitably to the conclusion that by the second clause of the fourth paragraph of her will Mrs. Darragh intended, and thought she was giving expression to such intention, that if her son be survived by issue of his own body, such issue then in being should take the estate, and such being the intention, and the language being subject to that import, it will be given that effect. Our construction, then, of the fourth paragraph of the will, both clauses thereof included, in connection with the first paragraph, is this: That by its terms John Greenleaf Darragh is given a life estate in one-half of the property of testatrix other than that specifically devised in fee in paragraphs 2, 3, and 6. If he is survived by his sister, Mabel Darragh Jenkins, but not by issue of his own body, his sister will take such estate; but if he is survived by issue of his own body, then those of such issue who are living at the time of his death will take the estate.

[10] We come now to the fifth paragraph of the will, relating to the estate given to Mabel Darragh Jenkins. It is segregated into two clauses; the second being the alternative of the first, which is as follows:

"In case of the death of my daughter, Mabel Darragh Jenkins, and in case of the death of John Darragh Barmore, her child, then the said John Greenleaf Darragh, if living, or his heirs, as hereinabove stated, shall take her estate. * * *"

We have shown that where a devise is made over to one "in case of the death" of another, and no other contingency is interposed, the death contemplated is one occurring before the death of the testator, and applying that rule to the clause quoted, the provision "in event of the death of" Mabel Dar-

ragh Jenkins' and John Darragh Barmore means in event of their deaths before the death of testatrix. The law construction writes the phrase to read this way:

"In case of the death of my daughter, Mabel Darragh Jenkins, before the death of testatrix, and in case of the death of John Darragh Barmore before the death of testatrix, then the said John Greenleaf Darragh, if living, or his heirs, as hereinabove stated, shall take her estate."

It is probable that testatrix intended there to provide that if both Mrs. Jenkins and her child died before Darragh died, then Darragh or the heirs of his own body would take. But it is not so expressed, and it would be repugnant to a settled rule of construction to write that contingency into the provision. So the contingency provided for by implication—the death of both Mrs. Jenkins and her son before the death of testatrix—did not occur, and is now impossible of occurrence, and accordingly the devise lapses.

[11] The second clause of the fifth paragraph, as an alternative of the first clause, provides that "in case that the said Mabel Darragh Jenkins at her death shall leave children, which includes John Darragh Barmore, her children shall inherit her estate, share and share alike." The clause would be simple, but for the phrase "which includes John Darragh Barmore" and the use of the word "inherit." The purpose of affirmatively designating the son as one of the children of his mother is to us inexplicable. But as the reference seems harmless, and without any influence upon the intention or construction of the clause, it should be treated as surplusage and of no effect for any purpose. For reasons which we have already set up in discussing the use of the word "inherit" in the fourth paragraph, it must be held that that word was likewise inadvertently used in the fifth. It is obvious that the devise over is to the children who may survive the first taker, and that a word of purchase, rather than of limitation, was intended. This purpose, it seems to us, is emphasized by the use of the qualifying words "share and share alike." It is quite unlikely that testatrix would attempt to exercise a control over the estate that the law does not permit by directing its course of inheritance after the death of the first taker, but it is inconceivable that she would undertake to say in what proportions it should thus descend. We think the provision that the property pass share and share alike to the children is conclusive of the intention that it pass by purchase, and not by limitation. So we hold that the second clause of the fifth paragraph of the will limits Mabel Darragh Jenkins to a life estate, with remainder over to those of her children who may survive her.

[12, 13] We will discuss again for a mo

ment the seventh paragraph of the will. The first clause is precatory merely, and it is left to the will of John Greenleaf Darragh and Mabel Darragh Jenkins whether its provisions shall be regarded. The second clause directs that the rights that John Darragh Barmore receives under the provisions of the will shall revert to others if he gives any of the estate he inherits under the will to any of his Barmore kin. This provision is, of course, for obvious reasons, void. This brings us to the end of the will so far as construction is concerned.

The judgment of the trial court is reversed and here rendered as follows:

(1) That John Greenleaf Darragh and Mabel Darragh Jenkins take a life estate, share and share alike, in the property owned by testatrix at the time of her death, other than the personal property specifically devised in fee and distributed by the provisions of paragraphs 2; 3, and 6.

(2) That if John Greenleaf Darragh dies before the death of Mabel Darragh Jenkins, without heirs of his body then living, the said Mabel Darragh Jenkins shall take his share of the estate, other then mentioned in paragraphs 2, 3, and 6, but if he is survived by issue of his own body, such issue living at the time of his death shall take said estate.

(3) That upon the death of Mabel Darragh Jenkins her children shall take that property in which in said will she is given a life estate.

Reversed and rendered.

COBBS, J., entered his disqualification, and did not participate in this decision.