### JOSEPH LYNN AND WIFE ET AL V. EDWARD BUSBY.

1. CONSTRUCTION OF WILL.—B. died in 1862, leaving a will, in which he made his three children, his executors and equal heirs. He gave, however, to his son D. a negro, in addition to his otherwise equal share, to compensate him for maintaining E. B., a deaf brother of the testator. In the next clause of the will, he expressed the wish that his son D. would take especial care of E. B. during the latter's life; and if his son D. should die before his brother, E. B., he desired that his other two children, E. L. and M. D., should take charge of and provide for his brother, E. B., while he lived. The remaining clause of the will provided, "it is my wish that my homestead and five hundred and fifty-nine acres of land, with the improvements thereto attached, shall be set apart to my son D., extra of his interest in the remaining portion of my estate, in consideration of the landed interest already given to my other children, and as a compensation for maintaining of my brother E. B. as aforesaid." Suit was brought by E. B., for the rents and profits of the homestead, in which it was claimed that it was charged in the hands of the legatees with the support and maintenance of E. B., during his natural life: *Held*—

    1. The will, properly construed, must be regarded as conveying the testator's desire for the maintenance and support of his brother E. B., as he had been previously provided for by the testator himself.

    2. It was the intention, that E. B. should be provided for as a member of the family, without imposing a pecuniary burden on the heirs, in the shape of a charge or incumbrance on the estate, or of limiting the support of E. B. to any specific amount.

    3. If E. B. left the homes of the heirs, provided for him in the will, without their fault, they would not become liable for an amount sufficient to support him elsewhere.

    4. A judgment making an annual allowance of a stated sum of money for E. B. in the future, and giving him money for his estimated expenses in the past, while living away from the heirs, was erroneous.

APPEAL from Freestone. Tried below before the Hon. John B. Rector.

The former report of this case, with the opinion in 37 Tex., 146, with the opinion here published, will convey to the professional reader a proper understanding of the case.

*Likens & Stewart,* for appellants, claimed, that if an implied trust was at any time created on behalf of E. B., it ceased the moment he, of his own accord changed his home and went to reside away from the heirs, citing Perry on Trusts, vol. 1, p. 117, sec. 113, and Wilson *v.* Ball, L. R., 4 ch. 581.

*Thomas G. Jones,* for appellee, cited Hill on Trustees, 4 Am. Ed., pp. 102, 110, 112, 115, 116, and notes.

ROBERTS, CHIEF JUSTICE.—When this case was before this court on appeal formerly, a construction was given to the will of appellee's brother, under which he claims a beneficial interest in a certain tract of land, to the extent of a support for himself during his life. (Busby *v.* Lynch, 37 Tex., 146. The court then held, that such portion of said tract of land as was over and above that part of it which was necessary to make the share of David Busby equal in value to the shares of each of his sisters, was, by the will of Milton Busby, charged with the support and maintenance of appellee Edward Busby. (Id.)

The District Court, afterwards, in following this construction, directed the ascertainment of the necessary facts by the jury, and decreed that an amount of the five hundred and fifty nine acres, equal in value to five eighths of the whole of it, should be charged and incumbered, so as to pay from the net proceeds of its rents and profits the sum of three hundred dollars annually for his support, and appointed a trustee to manage the said property, after it should be set apart by commissioners named for that purpose.

We are not disposed to unsettle the construction of the will, given to it by our predecessors in office, upon which this portion of the judgment and decree of the District Court is founded, in fixing and decreeing an apportionment of that part of the land which should be held charged with, and liable to, the necessary support of Edward Busby, and that which should not be so charged, it being a contingent incum-

brance, as nearly equitable as could well be arrived at under the circumstances, in view of the objects of the will. To that extent alone was the opinion definite. The amount of interest to which the said Edward Busby was entitled, and the mode of realizing and disposing of it, were left to subsequent adjudication, which was thus indicated in the opinion of the court: "What that interest is, and what portion of that interest will be necessary for the care, support, and maintenance of Edward Busby, are facts which should be inquired into by the court, and determined from all the attendant and surrounding circumstances." The court below, in attempting to carry out this part of the opinion of the Supreme Court, (as we may suppose,) submitted certain issues of fact to the jury, and, upon their finding thereon, rendered a decree, in addition to that portion heretofore spoken of, as follows, to wit: "And the court being further of opinion, that the plaintiff (Edward Busby) is entitled to recover of the defendants the amount of his expense for support and maintenance, since the 18th day of September, 1868, to the date of this judgment and decree, it is therefore ordered, adjudged, and decreed that the plaintiff do have and recover of the defendant, the sum of one thousand seven hundred and seventy-one dollars and sixty-eight cents, with interest, at the rate of eight per cent. per annum, from date of this judgment, together with all costs of this suit, for which execution may issue."

It is obvious, from the recovery of the amount annually, in future, as well as of the gross amount for the past support, that the court below, on the last trial, in ascertaining the interest of Edward Busby, construed the will to give to him a fixed sum of money annually, to be determined by what should be found to be an adequate support and maintenance, to be paid to him out of the rents and profits of said land, whether he used or needed that amount for his support or not, and only that amount during any one year, whether he needed more than that for his support and maintenance or not. We do not understand that to have been the intention

of the testator, in making a provision in his will for the care, support, and maintenance of his brother.    In arriving at that intention, the general scope and objects of the will, as well as the attendant and surrounding circumstances, are proper subjects of examination.    (Hunt *v.* White, 24 Tex., 643.)

Edward Busby was deaf and dumb, and had long lived with his brother Milton Busby, the testator, as a member of his family, and, although he was an able-bodied and intelligent man, ingenious in mechanism and industrious in his habits, it is not shown that he had ever sought to make and accumulate property, so as to make a provision for his own maintenance, in old age or in protracted sickness, or in any other misfortune or necessity.

Milton Busby had a minor son, David Busby, and two married daughters, when he made his will.   He had previously given lands to his daughters, which the jury estimated to have been worth, at the time the will was made, $3,000 each.    He expressed his desire in his will, that his children should have equal portions of his property, except in respect to so much thereof as he deemed necessary to secure a support to his brother.    To secure such provision, he gave to his son David his negro man Ralph, and also his homestead of five hundred and fifty-nine acres of land, estimated by the jury to have been worth, at the time of making the will, $8,000.    And he stated, in the sixth item of his will, that the divise of this land, which was so much more valuable than either of the tracts that had been previously given to his daughters, was "in consideration of the landed interest already given to my other children, Elizabeth Lynn and Malissa Davis," meaning to make his share of the land equal to each of theirs, "and as a compensation for sustaining and supporting my brother, Edward Busby, aforementioned."    Thus it is seen, that a much larger share of the property, to wit, the slave Ralph and the excess in amount and value of the land, was given to his son, in order to have his brother amply provided for.

The manner in which he was to be provided for was designed to be, as nearly as practicable, just as he had previously been provided for, which is evidenced by the third item of the will, as follows, to wit; "It is my wish, that my son David shall take especial charge of, maintain, and support my brother, Edward Busby, during his, the said Edward's, life; and should my son David die before my brother Edward, it is my wish that my other children, Elizabeth Lynn and Malissa Davis, shall take charge of and provide for my brother, Edward Busby, during his lifetime."

It is evident, that the main object for making the will at all was to provide for his brother a home with his children, as part of the family, and to so dispose of his property as to secure that object, without imposing a pecuniary burden upon them, and without his brother feeling it to be so. It never entered into the thought of the testator, in making this will, to fasten upon the estate devised to his son a charge or incumbrance of a particular amount of money annually, or of limiting the support of his brother to a particular amount of money. Had such been the provision designed, it would have been in the nature of an annuity, to be paid to his brother, which might be disposed of by him for other purposes than a support, if not needed for that, or which would have to answer for a support, however much more might be needed, in case he was overtaken by sickness, or permanent disease, or other infirmity, which might swell his necessary support to more than that amount during one year.

If Edward Busby has left the homes of those children of Milton Busby and made a support for himself, or has been supported by some one else, that is a state of case not anticipated, and provided for in the will. His leaving without their fault would not render them liable for an amount that might be estimated to be sufficient to support him in the homes of other people. Here is a bounty provided for him, with its mode of enjoyment prescribed in the will. He is of lawful age, and of sound mind, and under no legal restraint,

and can accept it or not, as he pleases. There are no facts shown, establishing a good ground for his not accepting it upon the terms and in the mode prescribed in the will. There is no evidence that he was not well treated, and properly supported, by those intrusted with that duty. If there should ever be any good equitable grounds for intrusting him to the care of other persons, or of making any other provisions than such as have been provided expressly in the will, then it will be time enough to determine what, if any, provision can be made for him, variant from that expressed in the will. Under the facts of the case, as presented in the record, we are of opinion that the judgment of the court, in making an annual allowance of a stated sum of money for the future, and in giving him a large sum of money for his estimated expenditure in supporting himself in the past, is erroneous.

The judgment is reversed and cause remanded.

REVERSED AND REMANDED.