Isabella Cooper v. Jno. G. Horner et al.

(Case No. 1629.)

1. WILL — CONSTRUCTION — EXECUTORS' SALE. — A will, executed in 1875, bequeathed to executors named therein, all the personal estate, in trust for the payment of the debts of the testator, and provided that no bond should be required of them. It gave to named legatees all the residue of the estate, real, personal and mixed; required the filing of an inventory of the estate by the executors; and provided that neither the probate nor any other court should have any jurisdiction over the estate, except to probate and register the will. The will, after providing for the education and support of the minor heirs out of the personal property, gave to the executors power, in terms, "to take possession of all of said estate and manage and control and dispose of the same for the interest and benefit of the legatees under this will, *and the payment of debts as hereinbefore specified.*" *Held:*

(1) The existence of debts authorized a sale of the real estate to pay them, the personal property being insufficient for that purpose, and the purchaser of land from the executors was not bound to follow the money paid by him to see that it was applied to the payment of debts.

(2) The desire expressed, that in no event should the estate be subjected to the jurisdiction of the courts in its administration, required a construction of its provisions which would invest the executors with power to sell land to pay debts when such sale was necessary, and when a resort to the courts would result in ordering such sale.

(3) Where the general intent of the testator is clear, and it is impracticable to give effect to all the language of the will expressive of some particular or special intent, the latter must yield to the former, but every expressed intent of the testator must be carried out when it can be.

(4) The general intent of a will overrules all mere technical and grammatical rules of construction.

(5) The purchaser of real estate from executors, acting under a power to sell for the payment of debts, is not bound, for his protection, to see that there are debts.

(6) If the suit be brought to recover back the property, a general allegation that debts existed to authorize the sale, without specifying them, is good on general demurrer.

(7) If the inventory of the property of the estate was never, in fact, filed, and the court having jurisdiction to require it to be filed, failed to require it, a purchaser at the executors' sale, against whom suit was brought in 1883, will be protected.

APPEAL from Brazos. Tried below before the Hon. W. E. Collard.

Mrs. Isabella Cooper, for herself and as next friend of Janie Cooper, brought suit with Meredith James, against Jno. G. Horner and Joseph Lock, in trespass to try title, and for partition, for seventeen twenty-fourths of lot No. 3, block No. 159, in Bryan, Texas, in 1883. Plaintiffs set up that they were the heirs and legatees of Eliza J. Cooper, who died in 1875, and left a will bequeathing the lot in controversy to plaintiffs and their sister, Mrs. E. O. Marshall, and that Mrs. Marshall had conveyed her interest, seven twenty-fourths, in the lot to Jno. G. Horner. Plaintiffs prayed judgment for their interest in the lot, for a writ of partition, and for their share of the rents. Defendants filed a general and special demurrer, plea of "not guilty" and general denial.

Defendant Lock disclaimed, except as tenant of Horner, and Horner pleaded specially:

(1) That Mrs. E. J. Cooper died in 1875, leaving a will, and bequeathing her property, after payment of her debts, to the legatees named by plaintiff, and naming J. D. Cooper, G. W. Durant and E. O. Marshall, who were to administer the estate independent of the probate court, except to file an inventory; that they were authorized under the will to dispose of the estate of Mrs. Cooper, independent of the orders of the probate court, and that said estate was indebted in the sum of $2,000.

(2) That J. D. Cooper was a minor and did not qualify under the will, and that Geo. W. Durant was removed by order of the probate court; that Marshall qualified as sole executor of said estate and filed an inventory on the 7th of February, 1877.

(3) That the estate was at that time largely indebted, and that he sold said property to Horner to pay the debts.

(4) That if it was not necessary to sell the property to pay the debts, it was necessary to sell to pay for the support, education and maintenance of plaintiffs, who were then minors, and that the executor had power to sell property and did sell for that purpose.

(5) That since he had sold the lot as executor, he and his wife, one of the legatees, had made Horner a deed.

(6) That the money for which the lot was sold to Horner was used to pay debts of the estate, or to support and educate the minors.

(7) Defendant alleged purchase in good faith, and possession for more than one year and valuable improvements; prayed to quiet his title, or, in case plaintiffs were entitled to recover, that they be required first to pay back to defendant the purchase money paid by him, and prayed for value of his improvements.

Plaintiffs filed a supplemental petition in answer to defendant's answer, general and special exceptions to same, general denial, and specially denied that estate of E. J. Cooper was indebted so as to authorize sale of the lot, and specially denied a charge against plaintiffs for board and education; denied that Horner was a possessor of the lot in good faith, and alleged that he held under his pretended deed adversely to plaintiffs the whole of the lot, and prayed to offset valuable improvements with rents.

The cause came on for trial on the 1st of October, 1883. The demurrers of both plaintiffs and defendants were overruled, to which both parties respectively excepted. The court, after hearing the evidence and argument, rendered judgment in favor of defendants, that plaintiffs take nothing and defendants recover their costs. Plaintiffs made motion for a new trial, which was overruled. Plaintiffs excepted and gave notice of appeal, filed bond and assignment of errors, and now prosecute this appeal.

*Henderson & Henderson*, for appellants, on their proposition that the executors had no power to make the sale, cited: Pasch. Dig., art. 1324; Howze *v.* Howze, 19 Tex., 557; Perry on Trusts, sec. 786, 973; and Jarman on Wills, 741–4, 973; Blanton *v.* Mayes, 58 Tex., 422.

That the purchaser was bound to see to the application of the purchase money, they cited: Sanger Bros. *v.* Heirs of Moody, Tex. Law. Rev., vol. 2, No. 10, p. 147.

*Ford & Taliaferro*, for appellees, in support of their proposition that the facts must be presumed to have existed that authorized the sale, cited: Johnson *v.* Bowden, 43 Tex., 674; Perry on Trusts, § 809.

WALKER, P. J. COM. APP.— The will in question contained, among others, the following provisions, viz.:

" *First.* It is my will and I do order that all of my just debts and funeral expenses be duly paid as soon as conveniently can be done after my decease.

" *Second.* I give and bequeath all of my personal estate of what nature or kind soever to George W. Durant, Edward O. Marshal and Jos. D. Cooper, the executors of this my last will and testament, hereinafter nominated and appointed, in trust for the payment of my just debts, and the legacies hereinafter specified, with power to sell and dispose of the same at public or private sale at such time or times, and upon such terms and in such manner, as to them shall seem meet.

" *Third.* I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of every name and nature whatever, to my children, five in number, and named as follows: Mary Ellen Marshall, Isabella Shannon Cooper, Joseph Durant Cooper, Ruth Catherine Cooper, and Eliza Jane Cooper, to be equally divided among them share and share alike. The heirs or representatives of the said children who may hereafter die, to be entitled to the same share or shares that their ancestors would have been entitled to receive if they were living, with the exception of the library, which I give and bequeath to my son Joseph D. Cooper, and the pictures of my daughters respectively.

" *Fourth.* I further order that after a sufficient support and education have been provided for the minor children from year to year, should there be a residue of money left, it is to be equally divided among my children, five in number. And I do hereby order and direct that all my real property shall be kept together, and shall not be partitioned until each and every one of the daughters are married or the youngest one shall arrive at the age of twenty-five years.

" *Fifth.* It is my will and desire that my executors render to the district court of Brazos county an inventory of my real estate and moneys, for registration, and that said court shall have no other jurisdiction over said estate, nor shall any other court have jurisdiction over said estate, except the probate and registration of my will

and the inventory above mentioned; and in order that my said estate shall in no event and under no circumstances be carried into the courts for administration, I hereby constitute and appoint my brother Geo. W. Durant, my son-in-law Edward O. Marshall, and my son Jos. D. Cooper, my executors of this my last will and testament, without any bond being required of them; and I hereby order and direct that no bond shall be required of them. With full power to take possession of all of said estate, and manage and control and dispose of the same for the interest and benefit of the legatees under this will, and the payment of debts as hereinbefore specified, and to partition the same among said legatees in accordance with the provisions of this will, and I request that they call in three discreet and impartial persons to assist in making said partition. And I do hereby authorize and empower my said executors or survivors of them to sell all of my personal estate for the payment of my just debts."

The judge found the following facts: "I find that at the time of the execution of the deed by the executor to Horner on the 7th day of February, 1877, there were subsisting debts against the estate amounting to $1,373.17; that the executor had on hand the rent for 1876, amounting to $464.25; the remnant of the library, worth $200, and some other personalty, worth probably $150."

Upon which facts he based the following legal conclusions, viz.: " The will offered in evidence authorized the executor to make the sale to pay debts and for the support and education of the minor children; and I find that the sale was made to pay such debts. The existence of the debts authorized the sale, and the purchaser was not bound to follow the money paid and see that it was applied to the debts. The account of the executor subsequently made cannot bind the purchaser or limit his proof to such debts as are therein exhibited. Such being my construction of the will and the findings of fact and law, I give judgment to the defendant for the property sued for."

The construction thus given to the will is clearly correct. Its provisions indicate sufficiently the general and leading intentions and objects which dictated them to make her general intent manifest.

The testatrix was emphatic in the declaration contained in the will that under no circumstances, and in no event, should her estate be carried into the courts for administration. To give proper effect to this intention, it would be necessary to construe the other provisions of the will with sufficient liberality to concede a power in

the executors to so act in reference to the payment of debts, and the support and education of the minor children, as to avoid the contingencies which would put the control of the estate or some portion of it within the probate jurisdiction of the district court as it was then organized. If the executors were not empowered under the will to so execute their trust as to sell real estate to pay debts and educate and maintain the minor children according to the exigencies that might require it, it would seem to follow under the law existing at the date of the will (1875) and in force (probate act of 1870), that the estate would not be administered consistently with the provisions of the statute providing for the withdrawal of estates from the jurisdiction of the probate court. Arts. 5626–5628, Pasch. Dig.

Art. 5628, Pasch. Dig., provides that "when a will contains directions that no action be had in the district court in the administration of the estate, except to prove and record the same, or to prove and record it and return an inventory and appraisement, no other provisions of this act except . . shall apply to such estate; but the same shall become like any other property to be administered under a power, chargeable in the hands of a trustee, and liable to execution in any court having jurisdiction."

The power to sell property according to the circumstances that necessitate it, even though it be real estate, must be coincident with a trust of this nature where it is charged with the payment of debts and the duty of raising the means necessary to maintain and educate children. If the will receives the construction that it limited the power of the executors to the sale only of personal estate for the payment of debts, the consequence must ensue that the debt may be nevertheless enforced by judgment against the executor to be satisfied by execution against any property subject to levy, real as well as personal. And so, too, in respect to the necessity of raising money to educate and maintain the minors; resort would have to be had to the court for a decree for sale of real estate, if necessary, to be sold at auction by the sheriff. Such results obviously were not in the contemplation of the testatrix, but, to the reverse, the whole will shows a wish and an intention to confide to the judgment and discretion of the executors to carry out, through their control of all the property, the main objects of the will, viz., to pay her debts, maintain and educate the minor children, and to preserve the real estate intact if possible, to be divided and partitioned on the happening of the contingencies specified in the will, without the aid, control or jurisdiction in any wise of courts, or incurring to the

estate the cost and expense of their supervision in respect to the mode by which real property should be sold, if necessary, in order to pay debts or raise means for the benefit of the minors. It may well be inferred that the testatrix did not have in her mind the fact that it might ever be necessary to sell real estate for either of the leading objects declared in her will.

The will provided that all of her personal property should be sold to pay debts, and she vested the legal title thereto in her trustees in trust for that purpose. It is probable that she contemplated that sales of personal property and incoming rents would be sufficient for the purposes referred to. It is, however, consistent with the rules of construction of wills to construe this one as fairly importing an intention of the testatrix to give her executors power to sell real estate to pay debts if it became necessary to do so, even if the will contained no clause or provision in it authorizing the disposition as well as the control and management of the real estate. But it does contain a provision of that character.

The fifth clause of the will invests the executors " with full power to take possession of all of said estate, and manage and control and dispose of the same for the interest and benefit of the legatees under this will, and the payment of debts as hereinbefore specified."

The special provision made by the will for the sale of all the personal property for the payment of debts is not an exclusive power in respect to the kind of property which may be sold for that purpose, according even to the terms expressed in the will. The provision of the will last above quoted confers the right to dispose of any of the property for the interest and benefit of the legatees, and although it may not and probably was not in the mind of the testatrix that that power would be exercised for the payment of debts, but that they would be paid through the personal property, deemed by her amply sufficient for that purpose, yet this last quoted comprehensive power was probably meant to give her executors power, in any contingency consistent with her desire to preserve the real estate intact if possible, to dispose of it if it should be found necessary to carry out the provisions in her will, and which would thereby advance her purpose and " the interest and benefit of the legatees."

" Where the general intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument, expressive of some particular or special intent, the latter must yield to the former; but every expressed intent of the testator must be

carried out where it can be. And the general intent overrides all mere technical and grammatical rules of construction." 1 Redf. on Wills, 433, 434 (star pages).

We think that the construction given in the court below to this will was correct, and there existed undoubted power on the part of the executors, under proper circumstances, to sell real estate.

The purchaser of real estate under a power of sale to pay debts is not bound to investigate whether there are debts, nor to see to the application of the purchase money. 1 Perry on Trusts, sec. 809..

The trust under this will was of a general and unlimited nature in respect to the sale of property to pay debts, and the purchaser was not bound to see to it that the purchase money was applied to the payment of any particular debt, or to see that it was applied at all to the payment of any debt. See Sanger Bros. v. Heirs of Moody, 60 Tex., 100; 2 Story's Equity, secs. 1127, 1130, 1131.

It is assigned as error that the court erred in overruling plaintiffs' general exceptions to defendants' answer, because a general allegation of indebtedness was not sufficient, and that the answer ought to have shown the specific items of debt under which authority for the sale was claimed. Also, in admitting testimony of specific debts against the estate of E. S. Cooper, there being no allegations of such in the answer.

For the disposition of these questions it is sufficient to say that the answer was good on general demurrer. If the executor had power to sell real estate for the payment of debts, a general allegation that he did so sell as averred in the answer was sufficient, on general exceptions, without alleging, so far as concerned the purchaser, what particular debt it was that occasioned the necessity. Williams v. Warnell, 28 Tex., 610; Frosh v. Swett, 2 Tex., 485; Warner v. Bailey, 7 Tex., 519; Rule 17, Rules District Court. If it were objectionable it could only be reached by special exception.

The finding of facts by the court was supported by evidence, and its decision upon them has the same conclusive effect as the verdict of a jury, and will not be disturbed unless clearly contrary to or without evidence. Jordan v. Brophy, 41 Tex., 284. We therefore deem the appellants' tenth assignment of error not maintainable, complaining that the court erred in finding that, at the time of the execution of the deed to Horner, on the 7th of February, 1877, the debts against the estate amounted to $1,373.13, and that Marshall only had on hand but $464.25 rents, and only $350 worth of other personal property.

It is assigned as error that the court erred in not giving plaintiffs

a new trial when it was shown that the executor never qualified as executor of the will by filing an inventory of the estate.

On the trial, in order to save time, on the representation of the correctness of the statement to that effect, made by the defendants' counsel, it was admitted by plaintiffs' counsel, at the request of defendants' counsel, that E. O. Marshall, as executor, had filed an inventory of the estate of E. J. Cooper, deceased. Counsel for defendants stated, at the time of soliciting the admission, that he had not examined whether there was an inventory or not, but desired the admission to save time, and "saving all rights to plaintiffs."

One of the grounds for new trial, in plaintiffs' motion therefor, was the fact that it appears from search made in the county clerk's office, the proper repository for such inventory if it exists, that the same is not to be found, nor is any such inventory recorded in the records of the county court; and alleging that no such inventory had ever been filed by E. O. Marshall. This ground of the motion was supported by the affidavit of one of plaintiffs' attorneys as to search unsuccessfully made to find the inventory among the papers of said estate, or any record thereof in the records of the probate court of Brazoria county. It was further supported by the certificate of the clerk of the county court of said county as to his having made a careful search for said paper, and failure to find the same; also of his having examined the minutes of the probate court, and his failure to find a record of any inventory of said estate.

In the case of Willis v. Ferguson, 46 Tex., 502, the question as to the nullity or otherwise of letters of executorship under a will, creating an independent administration of the estate, was presented on the ground that the executrix had not returned an inventory. The facts of the case did not require a full and direct decision of the point, but Chief Justice Roberts remarked upon the subject as follows: "But if this question were not concluded, as the facts stood before the jury, we are not prepared to say that there might not exist such a state of case by the long-continued action of the executrix under the will, as that she and the estate might be held bound in that capacity, notwithstanding she had failed to return an inventory, when no proceedings had been instituted in court against her for such default. Pasch. Dig., art. 1371. It was made the duty of the court, by the law then in force, to remove the executrix upon failure to return an inventory within sixty days from the grant of letters. Creditors and others interested in the estate might have required it to be done for their own security, which is its object. But if they failed, and the court failed to require it, persons who ac-

quired rights through her action in that capacity should not be held
to suffer an injury by her default and by that of the court in not
furnishing a better security for her faithful discharge of her duty."
Pasch. Dig., arts. 1294, 1295.

We consider the principle stated to be the correct rule, and that
it ought to be applied in this case; we are of opinion, therefore,
that the purchaser from the executor must be protected against the
default of the latter in failing to render an inventory, if such was
the case, and therefore there exists no ground of complaint for the
court's refusal to grant a new trial on the ground referred to.

We conclude that there is no error, and the judgment ought to
be affirmed.

                                                    AFFIRMED.

[Opinion adopted November 11, 1884.]