## Goldberg v. Home Missions of the Presbyterian Church in the United States.

(Decided February 16, 1923.)

### Appeal from Harrison Circuit Court.

1.  Charities—Bequest in Aid of Schools and Churches.—A bequest to a charitable organization, the objects of which are to help the mountain people by employing preachers and teachers to instruct

them and assist in building churches and schoolhouses, is sufficiently certain to meet the requirements of section 317, et seq., of Kentucky Statutes.

2. Trusts—Creation—Powers.—An instrument creating a trust may also create in the trustee a power of sale; and the power need not be conferred on the trustee in direct or express terms, but may be implied from the purposes of the trust or from words showing an intention to create the power.

3. Wills—Implied Powers—Trusts.—The will in controversy here held to create an implied power on the part of the trustee to sell the real estate of the testatrix and establish a fund to be used as directed in the will for the purposes of the trust.

CHESTER M. JEWETT and W. W. VANDEREN for appellant.

M. C. SWINFORD and HUNT, NORTHCUTT & BUSH for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This suit was filed to construe the will of Mattie D. Todd, which was probated in the Harrison county court shortly after the testatrix' death, occurring in 1909. The second clause of the will directed that, after the payment of the debts of the testatrix, all her property should be placed in the hands of a trustee, the income therefrom to be spent for the care and maintenance of the testatrix' aunt, Mrs. Elizabeth McIntosh. By the fourth clause it was provided that, after the death of Mrs. McIntosh, the property should be turned over to the Society of Soul Winners to constitute a fund, the interest of which only should be used in the prosecution of their objects. This disposition, however, was upon the condition that the Board of Curators of Central University relinquish a note for one thousand dollars given to them by Mrs. McIntosh, it being provided that, should they refuse to surrender the note, the property should go to the State University of Kentucky to be held in trust, the benefits and profits therefrom to be used in the education of poor boys in the mountains of Kentucky.

The testatrix appointed the Security Trust and Safety Vault Company of Lexington trustee of her estate during the life of her aunt, Eliza McIntosh. After the death of Eliza McIntosh the Society of Soul Winners advertised and sold at public auction the business house on Main street in Cynthiana occupied by A. Goldberg & Sons. Goldberg became the purchaser for $23,500.00, paying $2,350.00 cash and agreeing to pay the balance in equal installments one and two years thereafter. Conceiv-

ing that the Society of Soul Winners could not convey good title, Goldberg declined to execute notes for the deferred payments, and this action was filed by the Home Missions of the Presbyterian Church of the United States, successors to the Society of Soul Winners, for a construction of the will of Mattie D. Todd and for a mandatory injunction against Goldberg to compel him to comply with his contract of purchase. Goldberg filed answer, alleging his willingness to pay the money and accept the property if good title could be conveyed under the contract of sale. The Society of Soul Winners filed an intervening petition, showing that it is a corporation duly organized under the laws of the state of Kentucky, with power to receive and hold property, real and personal, and to carry out the objects of its organization, one of which is to help the mountain people of Kentucky by employing preachers and teachers to instruct them and to assist in the building of churches and school houses. It averred that it began the work for which it was incorporated in 1902 and continuously since that date has engaged in the work, but in 1911, on account of the growth of the work, it entered into an agreement with the Home Mission Board of the Presbyterian Church of the United States by which that board agreed to supplement the funds that came into the hands of the petitioner and to co-operate with it in the work that it had undertaken, and thereafter the funds that it collected were disbursed in conjunction with the funds donated by the Home Mission Board of the Presbyterian Church under the joint supervision of the two, and that all such funds were devoted to the purposes for which the Society of Soul Winners was organized. The Harrison county board of education also filed an intervening petition, asking that it be adjudged the owner of the property for the use and benefit of the public schools of Harrison county; and the Commonwealth of Kentucky likewise intervened, asking that the property be escheated to the State for the use and benefit of the schools in Cynthiana. Central University filed its answer, surrendering the note of Elizabeth McIntosh and relinquishing its claim to any interest therein.

On the submission of the case it was adjudged that the Society of Soul Winners could convey good title to the property, and Goldberg was mandatorily commanded to accept the property in compliance with the terms of the sale. He has appealed from the judgment, urging a re-

versal on the grounds, (a) that the bequest to the Society of Soul Winners in the will of Mattie D. Todd is void for uncertainty; (b) that the property in question could not be sold except by order of court, and then only for reinvestment; and (c) that the will of Mattie D. Todd devised an investment and, even if valid, the property could be sold only by decree of court and the proceeds invested in other property.

The property was devised to the Society of Soul Winners to constitute a fund, the interest from which should be used in the prosecution of the objects of that society. The objects of the society, as shown in its articles of incorporation, are to help the mountain people by employing preachers and teachers to instruct them and help them build churches and school houses. It is said, however, that these objects are not sufficiently certain, within the meaning of section 317 of Kentucky Statutes, to validate the devise. Spalding v. St. Joseph's Industrial School, 107 Ky. 382, is relied on in support of this position. The case is clearly inapplicable to the one under consideration. In that case the devise was to charity in general, to be expended in the diocese of Louisville according to the discretion of the brother of the devisor. Here the objects of the charity are definitely stated, and in that respect the will falls within the doctrine announced in Kasey v. Fidelity Trust Co., 131 Ky. 609; Greer, etc. v. Synod, Southern Presbyterian Church in Kentucky, 150 Ky. 155, and Kratz v. Slaughter's Exors., 185 Ky. 256. The latest case from this court sustaining a devise similar to the one involved here is Bailey v. Waddy, 195 Ky. 415.

The next two contentions attack the sale on the ground that it was void because not made pursuant to an order of court. It is said in this connection that real estate held for a charitable use cannot be sold except by order of court, and that the same procedure must be followed in the selling of an investment that is devised. These contentions both assume that the will of Mattie D. Todd contained no express or implied power of sale. That is a pertinent inquiry to the determination of the questions presented, for manifestly it was not necessary that the sale be effected under section 324 of Kentucky Statutes if the will itself conferred the authority on the trustee. The rule is that a power of sale need not be conferred on a trustee in direct or express terms, but may be implied from the purposes of the trust or from words

showing an intention to create the power. R. C. L., vol. 26, page 1285. The Kratz case, *supra,* discusses the subject as follows:

"However, it is the rule that, even though no express power of sale is contained in the instrument creating a trust, such a power will be implied when necessary in order to carry out the purpose of the trust and the duties imposed upon the trustee. 39 Cyc. 351. To that end no particular form of words is necessary. Any words which show an intention to create such power, or which impose duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee. Perry on Trusts, section 766; Cherry v. Greene, 115 Ill. 591, 4 N. E. 257; Illinois Christian Missionary Society v. American Christian Missionary Society, 277 Ill. 193, 115 N. E. 118; and for a like reason a power of sale may be implied from words which confer an authority or discretion respecting the property in question, which the trustees cannot fully exercise without a sale of the property."

Examining the will in the light of the law as announced in these authorities, we find that by the first clause the testatrix directed that her debts and funeral expenses be paid. By the second she directed that her two residences be sold by her executor and out of the proceeds her debts be paid; and she also directed that all of her household and kitchen furniture, including silver and china, jewelry and bric-a-brac, be sold. By the third clause she directed that all her property, after the payment of her debts, be placed in the hands of a trustee and "be rented out and the interest and dividends collected" and the proceeds spent in the care and maintenance of her aunt; also that in case any money should be left after the payment of her debts from the sale of the residence property, it should be turned into her estate and the proceeds loaned or invested as the trustees might see fit. Immediately following that provision, in the same clause, she said: "In the paying of my debts I do not want the business houses sold, especially I do not want the brick business house sold on Main street and now occupied by A. Goldberg & Sons." This language is referred to by appellant as an inhibition against the sale of the brick house. It is an inhibition—but only as qualified by the preceding words, *i. e.,* against a sale for the payment of the testatrix' debts. Further than that it does not extend. The testatrix evidently had in mind the

payment of her debts and provided that the property should not be sold for that purpose, but did not provide that it should not be sold for other purposes. The next clause provides that, after the death of the testatrix' aunt, all of her property shall be turned over to the Society of Soul Winners "to constitute a fund" the *interest* of which shall be used in the prosecution of the objects of that organization. The concluding paragraph of that clause is, "In case the Society of Soul Winners gets my property, then there is to be established what is to be called the 'Mattie D. Todd Fund,' and only interest or profits or income is to be spent." Considering these clauses together, we come to the inquiry, was it the intention of Mattie D. Todd to confer on the Society of Soul Winners, in the event that her property went to that organization, the right to sell the brick house?

It will be observed that in the devise to the Society of Soul Winners the testatrix directed that her property "be turned over" to that organization "to constitute a fund," the *interest* of which only was to be used, whereas the devise for the benefit of her aunt provided that the property should be placed in the hands of a trustee, to be "rented out" and the interest, dividends and proceeds collected and used for the maintenance of her aunt. The difference in the phraseology is significant. The testatrix evidently contemplated that the gift to the Society of Soul Winners should be assembled into a fund from which "interest" alone would be derived, thus precluding the conception of a retention of the real estate. But appellant contends that the concluding language of clause 4 opposes that view. We do not regard it as manifesting a different purpose, for the devise had already been made and the later language was evidently added for the purpose of designating the name of the fund, although it does provide that only interest or profits or income shall be spent. Certainly the testatrix expected the organization to establish a fund to be known as the "Mattie D. Todd Fund," and to use the interest on that fund in the prosecution of the objects of the organization, which she knew were confined to the mountains of Kentucky. There could be no physical use of her real estate in carrying out the objects of her charity, and while it is undoubtedly true that the term "fund" is broad enough to include real estate, it is apparent to us that it was the intention and purpose of the testatrix to permit the trustee, in the exercise of a reasonable discretion, to sell the

real estate and establish a fund so that the most effective use of the property might be made for the purposes of the trust. That authority being implied from the language of the will, we must hold that the sale of the building was valid and the Society of Soul Winners can pass the title to the purchaser.

The judgment is affirmed.