## SIMS et al. v. McMULLAN et al. (No. 3302.)

Court of Civil Appeals of Texas. Amarillo. Nov. 6, 1929.

Rehearing Denied Dec. 4, 1929.

Leon Moses, of Post, and Bean & Klett, of Lubbock, for appellants.

J. M. Harris, of Snyder, and Douglas & Scott, of Lubbock, for appellees.

HALL, C. J.   This suit was instituted by Mrs. Helen T. McMullan and her sister, Mrs. Beverley S. McMullan, joined pro forma by their respective husbands, against V. B. Sims, his brother, L. R. Sims, and their mother, Mrs. Laura Sims, a widow, and the First National Bank of Post.   The purpose of the action is to have the will of E. C. Sims, the father of plaintiffs, construed and declared void, and to recover the property mentioned in the will from V. B. Sims, an uncle of plaintiffs, who was appointed by the testator, E. C. Sims, trustee and independent executor.

Plaintiffs Mrs. Helen T. McMullan and Mrs. Beverley S. McMullan allege: That they are the only children of the deceased, E. C. Sims, by his first wife, Gladys Johnson Sims.   That, prior to the death of the said E. C. Sims, he had been divorced from their mother, Gladys Johnson Sims, and in connection with the divorce proceedings their mother had received her full share of all community property, and had released her husband, E. C. Sims, from all claims she may have had to any of his property.   That all property which passed into the hands of V. B. Sims in virtue of the will was the separate property of E. C. Sims at the time of his death.   That, although E. C.

Sims, after being divorced from his first wife, had married a second time, said second marriage was childless, and, subsequent to his death, settlement had been made with said second wife, who had no interest whatever in the subject-matter of this suit. That at the time of his death E. C. Sims was survived by several brothers, by his father, S. D. Sims, and his mother, Mrs. Laura Sims. That soon after the death of E. C. Sims his father died, and it appears that no action was taken to substitute in his stead a coexecutor.

In view of the contentions of plaintiffs that the will is too vague, indefinite, uncertain, and speculative to effect a testamentary disposition of the testator's estate, and that it is void, in that it violates the rule against perpetuities, we set out the will in full, as follows:

"Know all men by these presents:

"That I, E. C. Sims, of Garza county, Texas, being of sound and disposing mind, and desiring to make provisions and arrangements for the handling and management of my estate, and for passing and conveying title thereto, in case of my death, make and publish this my last will and testament, revoking any and all wills heretofore made by me.

"1. It is my desire and I so direct that my executors hereinafter appointed shall fully pay off, satisfy and discharge all legal indebtedness and obligations due by me at the date of my death, including my last medical, physician and funeral bills and expenses.

"2. Having in mind the pending separation of myself and wife, Gladys Johnson Sims, presupposing a divorcement of such marriage and a continued separation, and there now being no community property rights existing between myself and wife, she having received and taken all of her separate and individual as well as her interest in the community property prior to this date, and entertaining a strong fatherly love for my two girl children, Helen Trix Sims and Mildred Beverley Sims, and to the end that my said children may be provided for should they at any time hereafter become in want and in need of a support, I hereby give and bequeath unto my brother, V. B. Sims, all and entire of my estate of which I may die possessed of, including all my real and personal property, bills receivable, life insurance policies or any and all other demands, annuities or other incomes or sources of income.

"3. It is my desire and I so direct that my said brother V. B. Sims shall take and hold said properties of and belonging to my estate and to handle same according to his best judgment in such a manner that said estate may be placed and conducted upon an income basis, that is, that moneys belonging to my said estate shall be invested or loaned at interest in a safe manner so as it may be continually bringing and bearing an income, and that the real estate may be so managed, handled and controlled as to produce an income either in rents or leasage, and that my personal property be converted into cash at such time and in such manner as to produce the best results in sales and prices, the proceeds of such matters and things to be kept and maintained in one common fund to be known and continued as the E. C. Sims estate. I hereby confer upon my said brother as legatee hereunder full power and authority to make and execute any and all instruments necessary to the handling and disposition of my said estate for carrying out the purposes of this my last will and testament.

"4. It is my desire and I hereby direct that should my said two daughters or either of them hereafter become in a state of want or in need of funds necessary to meet their wants so as to prevent them from being embarrassed for want of funds to meet their actual living and necessary expenses in a reasonable economical manner of living, then that my brother, legatee hereunder, shall pay such sum or sums as may be actually necessary to relieve any such want or need to my two said daughters, or either of them, it being my desire that they my said daughters shall be each treated as nearly alike in being made recipients of the funds of my said estate to be paid for meeting their necessities for a living and support as hereinabove indicated.

"5. Should my father and mother, or either of them, at any time become in the state of want or in need of funds for a support and with which to pay the actual expenses necessary to their living in ease with a reasonably degree of economy, then I direct that my said brother pay to my said father and mother, or either of them, such funds of my estate as may be necessary to relieve such want or need to which they may be subjected, though I do not now anticipate that such conditions will ever exist as to my said father and mother unless some dire adversity or calamity should befall them.

"6. I hereby nominate and appoint my father, S. D. Sims, my brothers, V. B. Sims and L. R. Sims, as executors of this my last will and testament, directing that my said father and said brother V. B. Sims shall have full power and authority as executors of this my last will in counseling with each other in carrying out the provisions of this my last will, and should they for any reason not be able to agree upon any manner, thing or issue pertaining to the administration of my said estate, then they shall call in for consultation L. R. Sims the other and third executor herein appointed, and any two of said three executors agreeing upon said matter in controversy shall control in the decision of such matter, such two or three executors so acting together is only necessary under this will in determining as to the transactions to be had in and about the administration of my said estate, but the signature of my said brother V. B. Sims shall only be necessary to any conveyance or other instrument in writing to give same full force

and effect in passing title or otherwise perfecting any transaction required to be in writing pertaining to the affairs of my said estate and I direct that my said executors shall not be required to give bond, and that no other or further proceedings be had in the courts of the country in probating this my last will other than filing and making proof of same and in preparing and filing an inventory of my estate in the manner ordinarily required in the administration of estates.

"7. It is my desire and I direct that my life insurance policies one of which is now made payable to my estate and the other to my said two girl children as the beneficiaries therein, which said policy so payable to my said children I shall now take steps to have changed so that same will be payable to my estate, and that said policy be collected and the proceeds or funds thereof be put into the general fund of my estate in the same manner as any and all other proceeds of my said estate and that same be administered hereunder in like manner as other funds of my said estate, the funds of my said estate not paid out under the provisions of this my last will to be and remain in the hands of and as the property of my said brother V. B. Sims.

"In testimony whereof, witness my hand on this the 17th day of May, A. D. 1916."

The court's findings of fact are very full, but for our present purposes it is sufficient to say that it is found that from and after December 16, 1916, V. B. Sims had appropriated the land owned by testator exclusively to his own use and benefit, thus, in effect, repudiating the trust, and further that in January, 1929, prior to the filing of this suit, he expressly denied the right of the plaintiffs to any of the land and claimed exclusive title and ownership to all real estate in himself. These findings are supported by the evidence and obviate the necessity of plaintiffs making application to the executors or to V. B. Sims for financial assistance, because of their needs, prior to the institution of the suit. The law does not require a vain thing, and when V. B. Sims asserted absolute ownership of the land included in the estate, to the exclusion of all others, it would have been an idle formality for the plaintiffs to have applied to him for financial aid and help, because it may be inferred that the request would have been denied them; therefore we overrule the contention that the suit was prematurely brought, and that by the terms of the will plaintiffs could not seek the aid of the court until they had first applied to the trustee for assistance and this had been denied.

The next contention to be considered is that the will is void for uncertainty and indefiniteness, and is insufficient to effect a disposition of the testator's property, either in whole or in part. We cannot assent to this proposition. As said in Thompson on Construction of Wills, § 53:

"The right to make a testamentary disposition of ones property is a valuable right and will be sustained when possible. The interest of the state requires that wills be sustained, even though the language is ambiguous, and courts are loath to declare them void, but will give them a construction effectuating the intention of testators when possible under the well-recognized rules, legal principles, and applicable statutory provisions. * * *

"Every will must be construed, if possible, so as to avert intestacy. * * *

"It is deemed as much the duty of courts to uphold and enforce wills as to uphold and enforce the testator's contracts during life, and they ought not search for a construction which nullifies the will, if other equally reasonable interpretations exist which support it. * * *

"A devise is never construed absolutely void for uncertainty, except from necessity. If there is a possibility to reduce it to certainty, the devise will be held good, so as to carry into effect the intention of the testator. * * *

"It is only when the language employed by the testator will admit of no other reasonable construction than that the disposition is invalid that a court will declare such to be its effect."

In section 49 the same author says:

"Unless imperatively demanded by the language used, a will will not be given a construction inconsistent with the general scheme of disposition. The chief intent of the testator should be sought with a minimum disturbance of the general plan of the will, and technical rules will not be permitted to defeat this general intent. When the meaning of the language is doubtful, the will should not be so construed as to render one of its provisions inconsistent with the testator's general intention. * * *

"That construction will prevail which will support testator's main intention, minor parts of the testamentary plan being subordinated thereto. * * *

"The general intent of the testator to dispose of all of his property prevails over any particular intent, and this rule applies to cases where there is an intention exhibited to make a certain disposition of the property, and the mode of executing that intention is erroneously, defectively, or illegally prescribed in the will, and not to cases where there is a clear intention to effect another purpose distinct and differing from the general object. The clearly expressed general intent of the testator prevails over a particular intent expressed in a part of the will, where it is impossible to give effect to both, or where the words of such part are capable of a twofold construction. The general intent, though first expressed, overrules the particular intent, and a plain general purpose will not be subordinated to an apparent particu-

lar intent, and in case the two are incompatible the latter may be considered to be in the nature of an exception. Where two constructions are suggested, the one disregarding a word or clause of the will, and the other giving effect to the will as a whole, the latter must be adopted. Also, if there be two repugnant clauses which cannot be reconciled, the latter must prevail. * * * So if provisions cannot be harmonized, they should be so dealt with that the testator's general intent may be preserved. Such general intent will be effectuated though by so doing some particular or subordinate intent be defeated or the literal import of the words be departed from."

In section 56 the same author says:

"The mere making of a will gives rise to a presumption against intestacy, or that the testator intended to die intestate as to any part of his property, and in the absence of indications in the will to the contrary, the testator is presumed to intend to dispose of his entire estate. It is presumed that a testator's intention was that his property should pass according to his will, and not according to the statute of descent and distribution, as it is only in case of intestacy that the state will distribute the property of a decedent under its laws of succession."

The foregoing statement of the general rules applicable to the construction of the will before us are found to be supported by the decisions in this state. Lake v. Copeland, 82 Tex. 468, 17 S. W. 786; Laval v. Staffel, 64 Tex. 370; Haring v. Shelton (Tex. Civ. App.) 114 S. W. 389; Neely v. Brogden (Tex. Com. App.) 239 S. W. 192; Barmore v. Darragh (Tex. Civ. App.) 231 S. W. 472; Grant v. Stephens (Tex. Civ. App.) 200 S. W. 893; Verhalen v. Klein (Tex. Civ. App.) 268 S. W. 975; Heller v. Heller, 114 Tex. 401, 269 S. W. 771; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 147; Cooper v. Horner, 62 Tex. 362; McMurry v. Stanley, 69 Tex. 230, 6 S. W. 412.

On a trial to the court without a jury, the judgment of the court is, in effect, that the will of E. C. Sims did not dispose of the three sections of land which the testator owned at the time of his death, except to vest title thereto in the trustee, V. B. Sims, to such an extent as to enable him to lease, collect rents, and so manage the properties as to create a fund out of which the financial needs of the testator's two daughters and his parents should be supplied, and the court in this connection decrees that the trustee is to retain possession and control of such real estate for the purposes set out until the death of testator's mother, when the title shall vest in equal shares in the plaintiffs. The holding, as expressed in the judgment, is that the title to the land did not pass to the trustee, except for the special purposes mentioned in the testamentary trust, but that, under the statutes of descent and distribution, a fee

vested in plaintiffs upon the death of their father, the testator. The court further construes the will to vest in V. B. Sims, for his own personal use and benefit, all rights, title, together with the power of disposition of the personal property described in the pleadings.

The petition of the plaintiff, seeking to hold Sims liable as a testamentary trustee, prayed for an accounting, and the judgment disposes of the various contentions in a manner which will be hereinafter discussed. The court finds, as recited in the judgment, that the plaintiffs are then in need of funds, necessary to meet their wants, and to prevent them from being embarrassed financially and to pay their "actual living and necessary expenses in a reasonable and economical manner of living," and decrees that the trustee shall pay to each of them $75 per month, until "said trust fund be exhausted." The judgment reserves the right in the court to enlarge or reduce this monthly allowance in accordance with what the facts may show the needs and the requirements of plaintiffs to be at any time thereafter.

The court further adjudged that V. B. Sims had wrongfully appropriated to his own use and benefit the rents and profits of the three sections of land to the extent of $2,700, and had wrongfully paid out $3,810 for the purpose of prosecuting parties charged with murdering E. C. Sims, for which amounts the plaintiffs are given judgment, less $2,000, being the balance due V. B. Sims upon a loan of $4,000, which he had made to E. C. Sims during the latter's lifetime. It is further decreed that a balance of $1,485.70 then on deposit in the defendant bank in the name of E. C. Sims should be kept intact as a part of the trust fund to be administered under the terms of the will.

V. B. Sims held the property in a dual capacity, viz. as independent executor (until discharged) and as active testamentary trustee. In neither capacity could he pay any but valid claims against the estate or legally authorized expenses. Scott v. Taylor (Tex. Civ. App.) 294 S. W. 227; West Texas B. & T. Co. v. Matlock (Tex. Com. App.) 212 S. W. 937; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367. While we incline to the opinion that attorney's fees paid for prosecuting the slayer of E. C. Sims were not authorized, because it was not a debt against the estate, nor necessary for its preservation, a discussion seems to be useless, for the reason that there appears to be enough property on hand to satisfy any possible judgment in favor of plaintiffs.

A principal contention with reference to the will is that it is void, in that it violates the constitutional rule against perpetuities. Const. art. 1, § 26. The force and effect of this rule is to avoid any attempted disposition of property which may not vest within

21 years after some life or lives in being at the creation of the interest, to which is added 9 months in case of gestation. To come within the rule, the estate must be one which will or may not vest within such period. It is uniformly held that the life or lives which may measure the period must exist at the time of the death of the testator, when the rule is applied in cases of wills. It is said in 48 C. J. 1005:

■ "While it is essential that the lives by which a period of suspension or alienability or ownership or a postponement of vesting be indicated in the instrument creating the limitation in such manner as to be capable of ascertainment and a suspension or postponement for the time prescribed by the statute governing perpetuities is insufficient, it is not necessary that the measuring lives be expressly designated as stated; the term may be ascertained from the nature of the limitation, when the latter is such as to effect a necessary restriction or termination of the period, and accordingly, for the purpose of a limitation which effects a suspension or postponement, must, in its nature, be accomplished during the life of ascertainable persons in being, the duration thereof is sufficiently designated."

The nature of the limitation is such that the lives of the testator's father, mother, and two daughters are the lives in being which measure the duration of the trust and the application of the rule against perpetuities, because the trust is determined by the death of all the beneficiaries. In re Hendy, 118 Cal. 656, 50 P. 753; Locke v. Farmers' L. & T. Co., 140 N. Y. 135, 35 N. E. 578. The record shows that V. B. Sims, his father, and brother were appointed independent executors, but that the administration of the estate by them ceased long before the filing of this suit.

The will, in our opinion, requires that V. B. Sims, who is the sole trustee after the termination of the executorship, retain possession, management, and control of the property of the estate until the death of the four particular beneficiaries named in the will, and by the last provision, as expressed in the last clause of the will, all funds remaining in his hands vest immediately in him upon the happening of the contingency, which necessarily is the death of all the beneficiaries.

■ We do not know upon what theory the court based the conclusion that the real estate did not pass into the hands of the trustee and that the title to the personal estate vested in the trustee immediately. We cannot assent to either conclusion. Thompson on Construction of Wills, in sections 87 and 90, says:

■ "Punctuation and even capitalization are uncertain guides in the construction of wills, and they may be disregarded when they serve to obscure the true meaning when gathered from all parts of the instrument. The testator's intention, as disclosed by the whole will, uncontrolled by punctuation, must be the guide in construing the instrument. * * *

"Punctuation must be disregarded if it is in conflict with the testamentary scheme of the testator as gleaned from the provisions of the will, or prevents ascribing to the words employed their ordinary meaning, and courts often ignore the punctuation which the testator has employed in order to give effect to the intention of the testator as clearly shown from the whole will.

"The paragraphing of a will is not ordinarily permitted to control the meaning, and separate clauses may be read together, even though such reading may result in a limitation of one clause by the other. * * *

"A paragraph at the end of a will may operate on all preceding paragraphs, and may mean one thing when applied to one paragraph, and another when applied to another paragraph. * * * But a testator may, by language apparently at variance with that of another clause creating a devise, give a lesser estate than the meaning of the words of the devise, when standing alone, would impart."

■ It is true that V. B. Sims is referred to twice in the will as legatee, but, in view of the intent manifested by the instrument considered as an entirety, it is inaccurate to refer to him as legatee only. The will in paragraph numbered 2, when considered alone, gives all the property to him in fee; also provides as a part of clause numbered 7 that "the funds of my said estate not be paid out under the provisions of this my last will, be and remain in the hands of and as the property of my said brother V. B. Sims." The court's conclusion ignores the rule that the testator's intent must be gathered from the instrument as a whole. The trial judge may have concluded that "funds" referred only to money on hand and received from insurance policies, and the proceeds of the sale of personal property. We think this construction is incorrect. As used in the instrument, in the light of the context, the word "funds" means all of the property, whether real or personal, remaining in the hands of the trustee at the time of the determination of the trust. Fund or funds may mean any kind of property. Goldberg v. Home Missions, etc., 197 Ky. 724, 248 S. W. 219; In re Arnolt's Estate, 127 Misc. Rep. 579, 217 N. Y. S. 323; Broadway Bank v. Mc-Gee Creek Levee, etc., Dist., 292 Ill. 560, 127 N. E. 165; Miller v. Bradish, 69 Iowa, 278, 28 N. W. 594; Matter of Tatum, 61 App. Div. 513, 70 N. Y. S. 634.

■ It cannot be seriously contended that by clause No. 2 the testator intended to vest the absolute fee to all of his property, real and personal, in V. B. Sims, because the language in which he gives and bequeaths all of said estate is prefaced by his purpose expressed as follows: "To the end that my children may be provided for should they at any time hereafter become in want and in need of a support." Moreover, in the third clause he

speaks of the property as "my estate" several times, and provides that it is "to be kept and maintained in one common fund, to be known and continued as the E. C. Sims estate." In fact, the language of each of the subsequent clauses of the will is consistent only with the creation of a testamentary trust, in which V. B. Sims takes only such title as is requisite to the performance of the active duties imposed upon him as trustee. It may be necessary to hold that he has the fee, but it must be remembered that he holds such fee as trustee, and not as an individual. Lane v. Miller & Vidor Lbr. Co. (Tex. Civ. App.) 176 S. W. 100; Wisdom v. Wilson, 59 Tex. Civ. App. 593, 127 S. W. 1128; Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129; Matthews v. Darnell, 27 Tex. Civ. App. 181, 65 S. W. 890; Patten v. Herring, 9 Tex. Civ. App. 640, 29 S. W. 388; Grant v. Stephens, supra; McHatton's Estate v. Peale's Estate (Tex. Civ. App.) 248 S. W. 103; Montgomery v. Trueheart (Tex. Civ. App.) 146 S. W. 284.

We think it is equally clear that no present interest vested under the will in V. B. Sims, except as trustee and executor, and that he must take an estate, if at all, in the nature of an executory devise and charged with the trust. His right to take depends upon the contingency, apparent to the testator at the time of the execution of the will, that the financial needs of his mother, father, and two daughters probably would not exhaust the income and corpus of the estate prior to the death of the last surviving beneficiary. If the beneficiaries had met with financial disasters, and the funds in the hands of V. B. Sims had been reduced by unfortunate investment or other causes to the extent that the amount in his hands would not have been more than sufficient to supply their needs, then there would have been no funds remaining in his hands which he could have taken under the last clause of the will.

There is not only a presumption as above stated against partial intestacy, but the second clause of the will passes to Sims, as trustee, all of the testator's property, both real and personal, charged with the burden of relieving the beneficiaries' needs as they might arise. No annuity is created. Lynn v. Busby, 46 Tex. 600. And subsequent clauses authorize him to lease the land and to execute any and all instruments necessary to the disposition of the estate, for the purpose of carrying out the directions of the will. Clause numbered 6, which appoints the testator's father and brother L. R. Sims as coexecutors, provides that they, with V. B. Sims, shall constitute arbiters or umpires to settle any matter pertaining to the administration of the estate, but provides that the signature of V. B. Sims only shall be necessary to "any conveyance or other instrument in writing to give

same full force and effect in passing title or otherwise perfecting any transaction required to be in writing pertaining to the affairs of my said estate." He is not empowered to execute conveyances for any other purpose.

In view of another trial, we will not discuss the sufficiency of the testimony tending to show that the beneficiaries' financial condition was such that they were entitled to recover any sum from the trustee under the provisions of the will, further than to say that the evidence introduced was sufficient to raise an issue of fact.

For the reasons stated, the judgment is reversed, and the cause is remanded.